**Morris J. STARSKY, Plaintiff-Appellee,**

v.

**Jack R. WILLIAMS et al.,
Defendants-Appellants.**

No. 73–1520.

United States Court of Appeals,
Ninth Circuit.

Feb. 26, 1975.

---

**110**

Alan M. Kyman, Phoenix, Ariz., for plaintiff-appellee.

Howard P. Leibow, Sp. Asst. Atty. Gen. (argued) Phoenix, Ariz., Nicholas Udall, and Robert O. Lesher, Tucson, Ariz., for defendants-appellants.

Before BROWNING and DUNIWAY, Circuit Judges, and WOLLENBERG,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

The Arizona Board of Regents and its members appeal from a judgment ordering the regents to reinstate Morris J. Starsky as an assistant professor of philosophy at Arizona State University. Starsky brought this action for an injunction and damages under the Civil Rights Act, 42 U.S.C. §§ 1981–1985, alleging that the Board's decision not to renew his yearly contract violated his first amendment rights. The trial court held that the regents improperly. predicated the decision not to renew on constitutionally protected speech. Starsky

v. Williams, D.Ariz., 1972, 353 F.Supp. 900. We affirm in part, reverse in part, and remand on a limited issue.

In January 1970, Professor Starsky cancelled a regularly scheduled class at Arizona State to attend a rally at the University of Arizona, where he was one of several speakers protesting the arrest of certain University of Arizona students. Shortly thereafter, the regents instituted disciplinary proceedings against Starsky for his participation in this and seven other incidents involving allegedly unprofessional conduct. These incidents are described in the opinion of the district court and need not be rehearsed here. Although Arizona State University does not have a formal tenure system, Starsky had attained "stability of employment," which entitled him to a hearing before a decision not to renew his contract of employment. This he received before the faculty Committee on Academic Freedom and Tenure.[1]

After taking extensive testimony, totalling nearly 1200 pages of transcript, the faculty Committee made detailed findings regarding the eight specific incidents and concluded that, although the Committee did not condone all of Starsky's conduct, the incidents did not warrant dismissal. The university president forwarded these conclusions to the Board of Regents and recommended sanctions short of dismissal. Nonetheless, on June 10, 1970, the Board, as it had power to do, decided not to renew Starsky's yearly contract and thus terminated his employment. In making this decision, the regents relied on all eight incidents without assigning particular significance to any of them.

In this action, after both parties had moved for summary judgment on Starsky's claim for reinstatement, the trial judge proceeded to decide the merits of the claim on the basis of a written record. On the merits, the judge found

---

\* The Honorable Albert C. Wollenberg, United States District Judge for the Northern District of California, sitting by designation.

1. Starsky raised no due process challenge to the fairness or adequacy of this hearing; rather he based his constitutional claims solely on his first amendment rights. This appeal thus presents issues different from those in our recent decision in Burdeau v. Trustees of the California State Colleges, 9 Cir., 1974, 507 F.2d 770.

that the evidence did not support some of the factual findings of the Board and held that, of the eight incidents for which Starsky was discharged, six involved constitutionally protected speech under applicable Supreme Court precedents, one involved unprotected speech, and one involved conduct other than speech (cancelling a class) and was therefore unprotected. Applying the clearly erroneous rule, for reasons hereafter stated, we sustain the district judge's findings of fact, which were based on his exhaustive review of the evidence. Furthermore, we agree with his careful application of the law to each of the eight incidents.

Faced with a melange of reasons for the discharge, several based on constitutionally protected activity and therefore not valid grounds for dismissal under Perry v. Sindermann, 1972, 408 U.S. 593, 596–98, 92 S.Ct. 2694, 33 L.Ed.2d 570, the judge concluded that Starsky's termination was predicated primarily or substantially on protected activity. Accordingly, the judge entered judgment for Starsky, ordering him reinstated, but reserving all issues relating to damages. We affirm Judge Muecke's decision on this issue for the reasons stated in his careful opinion. We need not decide whether Judge Muecke might have applied a less stringent test that would invalidate a discharge if based in part, even though not primarily or substantially, upon protected activity. On that question we express no opinion. But for a procedural anomaly, we would affirm the judgment in its entirety.

This appeal raises two procedural issues, one of which requires further proceedings in the district court. They are: (1) whether it was proper for the district judge to enter judgment for Starsky on what the parties characterized as cross-motions for summary judgment, and (2) whether Starsky's claims are foreclosed by a contractual settlement.

### 1. Judgment on cross-motions for summary judgment.

■ The regents attack the judgment on the merits by arguing that summary judgment is improper because the trial court resolved genuinely disputed issues of material fact. Although we do not agree with the regents that some issues that they identify were genuinely disputed, we assume *arguendo* that the judge did resolve at least one disputed material issue, namely, what was the regents' primary reason for discharging Starsky. Nonetheless, we do not reverse the judgment, for we agree with the trial judge that, under circumstances unique to this case, the parties had in effect submitted this case to the court for trial on an agreed statement of facts embodied in a limited written record. The judge therefore was free to decide all issues relating to Starsky's right to reinstatement and, in so deciding, to resolve factual issues. *See* Southwest Forest Industries, Inc. v. Westinghouse Electric Corp., 9 Cir., 1970, 422 F.2d 1013, 1015–18, cert. denied, 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138. This is why we apply the "clearly erroneous" rule, Fed.R.Civ.P. 52(a) in reviewing the judge's findings.

The judge made every effort to maneuver this case into a posture that would permit expeditious resolution of the threshold constitutional issues determinative of Starsky's claim to reinstatement. To that end, during a hearing on defendants' motion to dismiss in the early stages of the litigation, the judge entreated the parties to take advantage of discovery and encouraged them to expedite a decision of the merits of the reinstatement claim without a full trial, suggesting by way of example that summary judgment might be appropriate. Several months later the regents moved for summary judgment, relying on the pleadings, various affidavits, minutes of the meetings of the Board of Regents, and the transcript and exhibits from the hearing before the faculty Committee on Academic Freedom and Tenure.

As required by Local Rule 11(h) of the District of Arizona, the regents submitted a statement of material facts on which they relied for their motion. After one faltering attempt to rely on a mere series of citations to the administrative transcript, Starsky also submitted

his statement of material facts. His principal ground for opposing summary judgment was that he alleged a conspiracy among the regents to punish him for his unpopular views and that questions of motive ought not to be resolved on summary judgment. The regents nonetheless maintained that the summary judgment procedure was proper.

At the hearing on the motion, upon persistent inquiry from the court, both parties made it clear that they relied on the written record before the court and that all the relevant facts on the issue of reinstatement were contained in that written record. Once again the judge urged the parties to make use of discovery to ensure that the record before the court was complete. Starsky followed the judge's suggestion by propounding interrogatories to each of the individual defendants, who included the regents and the university president. The answers to the interrogatories revealed no additional documents or information with which Starsky desired to supplement the record.

The judge then ordered a preliminary pretrial conference, suggesting that the case could be adjudicated either by cross-motions for summary judgment or by trial to the court. Although there is no record of the pretrial conference before us, a later order reveals that Starsky agreed to file a cross-motion for summary judgment and that the parties considered the case ripe for adjudication on the merits.

Starsky then moved for summary judgment on the theory that his first amendment rights had been infringed. In response, the regents made no objection to Starsky's assertion that there

were no factual disputes. Rather, the regents argued the merits of their legal theory that the presence of one valid ground for dismissal, notwithstanding the regents' concomitant consideration of constitutionally invalid grounds, validated their action, and further argued that the court should grant their own motion for summary judgment. The regents never suggested that there were material factual disputes which precluded granting Starsky's motion. There was no oral argument on Starsky's motion.

Even after taking the cross-motions under submission, the judge made two specific requests for additional documents to shed light on the deliberations of, and materials considered by, the regents.[2] The regents produced the requested documents.

■ We are mindful that the mere fact that the parties make cross-motions for summary judgment does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other. 6 J. Moore, Federal Practice ¶ 56.13 (1965). However, in this case, the parties had in fact agreed that all of the underlying material facts were those reflected by the written record before the court. Given the unique procedural history of the litigation, which was drawn out over two and one-half years, the court was justified in concluding that the parties had in effect and in substance agreed to a trial of the reinstatement claim on the written record. In the words of the district judge:

This Court issued an order on July 18, 1972 stating that this case is ready for final judgment on the merits on

2. On July 18, 1972, the court issued the following Order as a preface to a request for additional documents:

Both parties having moved for summary judgment and having submitted statements of fact under Local Rule 11(h), and no party having in any way contradicted the material evidentiary facts as recited in the opposing party's 11(h) statement, or recited any materially factual matter which would preclude summary judgment to the other side, and all parties appearing to rely upon

the transcript of the hearing before the committee of academic freedom and tenure, and the other exhibits on file in this matter, it appears to this Court that the posture of the case at this point would permit a final adjudication on the merits on the issue of liability only [footnote omitted] based upon all of the documentary evidence on the file, there being no further evidence to be presented by the parties.

.　　.　　.　　.　　.

the issue of liability. The parties were given additional time to file any further pertinent documents. Additional documents were filed, and neither party took issue with this Court's characterization of the posture of the case. This Court, therefore, can now decide this case on the issue of liability. Should the plaintiff prevail, the issues of damages would be tried later.

Throughout the proceedings to date, neither side has suggested the existence of any additional evidence pertinent to the issue of liability. *Although we are dealing with cross-motions for summary judgment, the case in view of the foregoing is now in the posture of an agreed statement of facts.*

353 F.Supp. at 904 (emphasis added). The comments of the judge, and of defendants' counsel, at a hearing on a proposed form of judgment, reveal that the parties understood the foregoing to be a fair statement of the posture of the case. We agree that it is.

That the parties and the court referred to the case as being submitted on cross-motions for summary judgment is therefore not controlling. We have on other occasions, in cases nominally submitted on motions for summary judgment, held that the parties had stipulated to what was in effect a trial to the court on an agreed written record. Southwest Forest Industries, Inc. v. Westinghouse Electric Corp., 9 Cir., 1970, 422 F.2d 1013, 1017–18; Gillespie v. Norris, 9 Cir., 1956, 231 F.2d 881. In *Gillespie* we said:

Now, while summary judgment cannot be granted where there are questions of fact to be disposed of, even by consent of all concerned, there is no reason why parties cannot agree to try a case upon affidavits, admissions and agreed documents. In effect, that is what was done here. No objection whatever was made at the time of submission that there were questions of fact which could not be decided upon the evidence before the trial court.

231 F.2d at 883–84. We drew the same conclusion in *Southwest Forest Industries.* We draw the same conclusion here. The court properly decided the merits of the reinstatement claim.

### 2.  The purported contractual settlement.

Somewhat belatedly, the regents have raised the argument that Starsky and the university entered a contractual settlement, or an accord and satisfaction, which bars this action.[3] The regents base this argument on a terminal sabbatical agreement offered by the regents and accepted by Starsky not long after the inception of the lawsuit.

When the Board of Regents decided on June 10, 1970, not to renew Starsky's contract, they adopted the following resolution to effect the termination:

It is therefore the judgment of the Board that the interests of education in the State of Arizona require that Dr. Starsky no longer be permitted to teach on the campuses under the jurisdiction of this Board. The decision of this Board shall be carried out in the following manner:

1.  That Doctor Starsky, having applied for sabbatical leave, be given the opportunity to take a terminal sabbatical leave for the full academic year, 1970–71, for which he is qualified in terms of years of service, and for which he will be paid the usual rate of 60% of his regular salary, with the full understanding that (a) he will absent himself from the Arizona State University campus during this period of sabbatical leave; and (b) his contract will not be renewed at the close of the 1970–71 academic year, and neither will he be required to return to Arizona State University for a period of time following such leave.

---

**3.**  The parties have variously denominated this legal theory as an "accord and satisfaction" or as a "contractual settlement" of a claim.

For purposes of this appeal, we perceive no distinction between the terms and adopt the latter for convenience.

2. That if Doctor Starsky does not choose to accept the foregoing arrangement, his contractual relationship with Arizona State University be terminated as of the end of the 1969–70 academic year, and he be tendered no new contract for further services at Arizona State University.

On July 28, 1970, Starsky, who had filed his first complaint in this lawsuit before the regents formally decided not to renew his contract, signed and submitted an application for sabbatical leave. As part of the standard form, that application contains the following statement: "I have read and will comply with the provisions of the Sabbatical Leave Policy of the Board of Regents." Typed in immediately after this statement, and immediately above Starsky's signature, is the following additional statement: "It is also understood that this leave, if granted, will be subject to action taken by the Board of Regents, June 10, 1970." This application was approved by various university officials on July 29 and 30.

■ On July 27, 1970, Starsky had filed his first amended complaint in this action. The striking proximity of events and the ambiguous language of the sabbatical application make us wonder why the parties did not mention the pending lawsuit in the agreement. The regents now urge us to hold, as a matter of law, that Starsky's claim is barred by the putative settlement reflected by the sabbatical agreement. This we decline to do because the record indicates that the court below did not rule on the issue and because there appear to be material issues of fact. Although the sabbatical agreement seems to us to establish, prima facie, a contractual settlement that would bar this action, we cannot ignore the fact that the regents did not present this issue as effectively as they should have to the trial judge and therefore failed to secure a ruling on it. Moreover, the fact that this action was pending, but is not mentioned in the papers relied on by the regents, raises doubt as to the parties' intentions.

To explain how the seemingly critical issue of the purported contractual settlement languished in the proceedings below requires a brief recapitulation of the events revealed by the record. The regents first raised the alleged settlement as an affirmative defense to this action in a motion to dismiss, to which they attached certified copies of the June 10 minutes and the terminal sabbatical agreement executed by Starsky. The motion was filed October 19, 1970, in response to Starsky's amended complaint, which had been filed July 27, 1970. The judge did not rule on this aspect of the motion, apparently because Starsky elected to file a second amended complaint on May 10, 1971. A third amended complaint was filed on June 17, 1971. As required by Fed.R.Civ.P. 8(c), the regents' answer, filed on July 28, 1971, clearly pleaded the agreement as an affirmative defense of accord and satisfaction.

However, when the regents moved for summary judgment, they failed to raise the settlement issue specifically as a ground for summary judgment. Neither their motion, the attached affidavits, nor the supporting memorandum made any reference to the putative contractual settlement. In fact, the way in which the regents submitted their motion for summary judgment may have misled the judge. Even though the regents had already submitted a certified copy of the minutes of June 10, 1970, meeting of the Board of Regents with the earlier motion to dismiss of October 19, 1970, the regents attached another certified copy of those minutes, along with the minutes of two other meetings, to their motion for summary judgment. But the regents did not provide another copy of the sabbatical agreement, or refer to it in any way. The only copy of that agreement in the entire record before us, which we understand to be the entire record of the proceedings below, is the one attached to the October 19, 1970, motion to dismiss. Because the subsequent motion for summary judgment made no explicit reference to affidavits not attached thereto, we would not expect the parties or the

court to have referred back to the motion to dismiss, which had been filed months earlier, and which had fallen into limbo because the complaint had been twice amended thereafter.

Arguably, therefore, the regents might be deemed to have abandoned the issue. Indeed, we think they came perilously close to doing so. At the oral argument on the regents' motion for summary judgment, their counsel stated only as a factual matter, in passing, that Starsky had been granted a terminal sabbatical leave, and gave no hint that the regents relied on it in any way as a contractual settlement barring the lawsuit.

At the same oral argument, Starsky's counsel raised a question about missing minutes of certain Board meetings that were held before the decision to terminate Starsky. To allay any potential claims that the record did not contain all the relevant facts, the judge instructed Starsky to discover by conventional means whether there were any additional records of pertinent Board meetings. Starsky then submitted interrogatories to each of the regents and to the university president asking whether they had discussed Starsky's case at meetings other than those summarized by the minutes then in the record. The regents responded with sworn written answers which revealed no other pertinent meetings *before* the June 10, 1970, decision to terminate Starsky.

However, the answers of four regents [4] made reference to a meeting on July 11, 1970, at which the regents considered Starsky's terminal sabbatical. The answer of one of the regents, Dunseath, reveals that the Board expressly considered the effect on the pending lawsuit of Starsky's acceptance of the terminal leave.[5] If that answer completely and accurately reports the negotiations between the parties, it seems very likely that, by accepting the terminal sabbatical leave, Starsky relinquished his claims against the university, both for damages and for reinstatement. Furthermore, the answer refers to highly relevant writings, a letter from Starsky's attorney to the president of the university and the minutes of the July 11, 1970, Board meeting, which we suspect still exist but were not placed in the record before the district court. There may also be further correspondence between the university president and Starsky's attorney.

We note that, although regent Dunseath's answer is illuminating on the settlement question, it was figuratively buried in nearly two hundred pages of repetitive interrogatories. Neither party directed the court's attention to these answers, for the apparent purpose of the

---

4. Messrs. Singer, Dunseath, Paris, and Sharber.

5. Question 8 of the interrogatory directed to each regent asked:

> Was the subject of the non-renewal of Professor Starsky's employment contract and the granting of a terminal sabbatical leave ever discussed at any meeting of the Board which you attended?
>
> For each occasion give the date, time and place of meeting and other participants, whether Regents or not.

Regent Dunseath answered in part:

> I did not attend or take part in the meeting of the Board of Regents on June 10, 1970, at which meeting the Board decided that the interests of education in the State of Arizona require that Dr. Starsky no longer be permitted to teach on the campuses under the jurisdiction of the Board.
>
> The Board of Regents, at the same meeting, gave Dr. Starsky a choice: [reciting the two choices set out in the regents' resolution quoted above].
>
> I attended a meeting of the Board of Regents on July 11, 1970, at which meeting President Newburn reported that he had received a letter from Mr. Alan M. Kyman as attorney for Dr. Starsky wherein Mr. Kyman stated that Professor Starsky would not accept the Regents' conditional offer of a sabbatical and was willing to accept an unconditional sabbatical designated "terminal" with the understanding it was not in full or partial settlement of any claim he may have arising out of the termination of his employment and did not constitute a waiver or settlement of any of his legal rights. The Board, after discussion, decided not to change the choices given Dr. Starsky on June 10, 1970, and instructed President Newburn to advise Dr. Starsky that it maintained and had reaffirmed its position as to such choices.

interrogatories was to uncover other pertinent documents supporting plaintiff's claim on its merits. Neither party thereafter moved to supplement the record with additional material. However, twice the judge did direct the regents to supply specific documents to which the moving papers made reference. None related to the purported settlement of the lawsuit.

Suffice it to say that from the filing of the regents' motion to dismiss on October 19, 1970, until after the judge first filed his opinion on December 26, 1972, except for the answer of July 28, 1971, the record reveals no instance where any party raised the so-called accord and satisfaction or contractual settlement issue. Like the answers to interrogatories, the pertinent papers, filed with the motion to dismiss, were buried in several hundred pages of papers in the clerk's files.

The judge's thorough 70-page opinion granting Starsky reinstatement alludes neither to Starsky's acceptance of the terminal sabbatical nor to the contractual settlement argument. After the initial filing of the opinion, the judge withheld entry of judgment for a short time to permit emendation of any clerical errors in the opinion and judgment and to allow the Board to meet to consider its response to the adverse judgment.

On January 22, 1973, the regents submitted a memorandum addressing the proposed form of judgment and attempting to resuscitate the dormant contractual settlement issue.[6] In his response, Starsky argued that the matter raised was immaterial.[7] At the January 26, 1973, hearing on the proposed form of judgment, the judge prefaced the argument with a brief explanation of his opinion. In his view, the terminal sabbatical agreement was relevant only to the question of whether Starsky would be entitled to money damages, a question the parties and court had agreed to reserve for a subsequent trial. Therefore the judge felt it unnecessary to rule on the purported settlement at that time.[8] Counsel for the regents then made another attempt to argue that the sabbatical agreement barred even the injunctive action for reinstatement.[9] To

---

**6.** The regents [defendants'] memorandum argued as follows:

The Defendants at the earliest outset of litigation submitted for the determination of the Court a position of nonliability based upon Plaintiff's acceptance of a terminal sabbatical leave and his written statement that it was accepted subject to the Order of the Board of Regents terminating his employment June 10, 1970. The Court's Opinion and Order dated December 26, 1972, does not discuss or determine this issue, and it is urged that the Court now rule on this issue for guidance of counsel.

**7.** Starsky argued:

5. *The Court does not have to make findings of fact and conclusions of law on immaterial issues.*

The Court did not have to make any discussion regarding the issues of alleged nonliability based upon the acceptance of a terminal sabbatical leave, because this is immaterial. The fact that a party has raised an issue, be he a Plaintiff or Defendant, is no guarantee or assurance of materiality to the ultimate decision of the Court. If immaterial, it need not enter into the Court's findings or opinion or judgment. Sonken-Galamba Corp. v. Atchison, T. & S. F. Ry. Co., 34 F.Supp. 15 (D.C., W.D. Missouri, W.D.), 1940, at Page 16. Gulf King

Shrimp Company v. Wirtz, 5 Cir. 1969, 407 F.2d 508, at pages 515 & 516.

**8.** On the contractual settlement issue the judge said:

The other aspect of this matter having to do with the sabbatical leave issue and his taking money for part of his salary, or half of it, whatever it was, seems to me to go to the issue of damages and the question of mitigation and the question of how much he received and the question if, in fact, he is entitled to any damages or whatever may be argued, and I don't see how it applies at all to the case here, since I have found as a fact, and I have concluded as a matter of law, as is made pretty clear in my 70-page opinion, that he was fired in violation of his right of free speech and in violation of his due-process rights, so I think that it is—I think the other aspect may have to do with whether or not—what kind of damages should be given to him, and so forth and so on, and I don't know that I have to rule on every possible issue that is presented in the case, if—so long as I rule on the basic issue of the matter of his discharge.

**9.** Mr. Leibow, for the regents, apparently admitting that it was the first time since the motion to dismiss (or actually the answer)

this argument, the judge responded by asking whether there was a disputed issue as to whether Starsky was improperly coerced into signing the sabbatical agreement.[10] It is clear that the trial court never ruled on the question of the alleged settlement.

The judge might have taken the position that the regents' reliance on the alleged contractual settlement came too late, and that therefore this defense was waived. But he did not do that. As we read the transcript, the judge felt that the circumstances surrounding the execution of the agreement could not properly be presented or adjudicated on the basis of the written record then before him, and that the sabbatical agreement bore only on the damages question. We agree with the first proposition but disagree with the second.

If the objective intention of the regents,[11] as communicated by them to Starsky in the negotiations which apparently took place, was that the terminal sabbatical was offered in full satisfaction of Starsky's claims, and conditioned on their release, and if Starsky, knowing this, signed the agreement and thus accepted the regents' offer, then the agreement would bar the entire action, both the injunctive claim for reinstatement and the claim for damages. Although in light of the minimal efforts of counsel to present the issue for adjudication we think that the court's failure to rule on it was understandable, we also think that, absent a waiver, it was error. In the interests of proper adjudication, we think it best to resolve the confusion by remanding the case to the district court for a decision on the limited questions (1) whether the regents waived the defense based on the terminal sabbatical agreement, and (2) if they did not, whether, by accepting the terminal sabbatical agreement, Starsky relinquished his claims against the university arising from his termination. *Cf.* Mudrick's Inc. v. National Surety Corp., 1971, 143 U.S. App.D.C. 39, 442 F.2d 761, 762.

---

that he had raised the point, argued as follows:

> With respect to the issue of the sabbatical leave which was mentioned in the—and urged in the initial motion to dismiss, it was the position of defendants at that time, and still is, that there is an element, a legal element in the position taken that does not give rise to damages and that defendant [sic: plaintiff] had an election to accept sabbatical leave on the terms stated that this would be a terminal leave, he did so, and that by reason of his action he may now not [sic] complain that the actions of the regents were wrongful, in that he has accepted compensation.

10. The following discussion ensued:

> THE COURT: Do you think, at the very least, there is an issue of his signing or agreeing to a contract with a gun to his head, so to speak, coercion?
> MR. LEIBOW: Absolutely there is an issue as to that. It has not been explored, however.
> THE COURT: Really, by anybody.
> MR. LEIBOW: No.
> THE COURT: Until the judgment appeared to be one that—which is what always happens in summary judgment. When you think you have the parties agree there are no remaining issues as to fact and then the party that loses always discovers an issue.

> MR. LEIBOW: We are not claiming, Your Honor, that there are any additional facts. We are maintaining and submitting to the Court that the document, which is self-explanatory, plaintiff's own statement which was added to the form, that he would accept this as his terminal leave, has not been refuted by the plaintiff.
> THE COURT: Well, obviously, as to why he signed that document is not an agreed statement of fact. If it is, tell it to me. We will make it—I will consider whether it should be part of the record or not.
> MR. LEIBOW: I should think there would certainly not be an agreed statement of fact.
> THE COURT: You just said there was no fact issue.
> MR. LEIBOW: There is no issue that this document was not, in fact, signed and—
> THE COURT: It doesn't cover the problem, though, we were just discussing.
> MR. LEIBOW: It does not, that is true, Your Honor, it does not cover the problem.

11. By "objective intention" we mean the intention of each party that was communicated to the other. A subjective intention of one party, never communicated to the other, either orally or in writing, would be of no significance. What counts is the intention or interpretation of the agreement that each party communicated to the other.

In remanding, we intimate no opinion on the merits of the question of waiver or of the question of the contractual settlement issue. As to the latter, the parties should be free to adduce before the trial court any evidence pertinent to the objective intention of the parties as to the effect of the terminal sabbatical agreement. If there is written evidence of communications by Starsky's attorney to the regents, of the deliberations of the regents on the matter, and of communication by or for them to Starsky or his attorney, we would expect the parties to provide that illuminating evidence. If testimony on the subject is available, that, too, would be material. See *Mudrick's, supra.* In referring to the evidence that might be produced, we express no opinion as to whether any or all of it must be excluded under the parol evidence rule. That question, too, is one for the trial court in the first instance.

We remand this case to the district court with instructions to determine the questions outlined above. If the court finds that there was no waiver and that the agreement was in fact a binding settlement, the court should vacate the injunction, deny all relief requested by Starsky, and enter judgment for the defendants. If the court finds that the defense was waived or that there was no contractual settlement, and because we affirm the court's decision that the discharge was invalid, the court should continue the injunction in effect and should proceed to an appropriate determination of the issue of damages. We decline to reach the damages questions. In the interest of avoiding repeated appeals, we suggest that the court consider deciding both the questions outlined above, even though the court may find that there was a waiver of the defense.

If there is a later appeal, the appealing party may, on motion, incorporate the present record and briefs on this appeal as part of the record and briefs on that new appeal. Only the new record developed on remand need be fowarded to this court, and the parties need file only limited briefs, addressing the remaining issues relating to the settlement and its effect.

Affirmed in part, reversed in part, and remanded.