**Roderick WASHINGTON, Plaintiff,**

v.

**Rosie B. GARCIA; M. Calvin, M.D.; A. Robles; R. McCracken; R. Morales; J. Franco; D. Viale; R. Rock; M. McNair; R. Stanifer; R. Giles; and A. Tomasetti, Defendants.**

**Civil No. 95–1032–JFS.**

United States District Court, S.D. California.

Sept. 10, 1997.

Roderick Washington, pro se.

Timothy C. Foote, Deputy Atty. Gen., for Defendants.

## MEMORANDUM DECISION DENYING DEFENDANTS' MOTION FOR RECONSIDERATION [117–1].

STIVEN, United States Magistrate Judge.

## I. INTRODUCTION

The present suit was filed on June 30, 1995. The Plaintiff Roderick Washington, was incarcerated at Centinela State Prison ("Centinela") during the period for which his allegations are made. All Defendants were employees at Centinela at the time in question.

While he contends Defendants violated his constitutional rights, Plaintiff admits he engaged in numerous incidents of serious misconduct while at Centinela,[1] including physi-

cal assaults on staff and disobeying orders. (Pl.'s Mot. Summ. J. ¶ 3.) Plaintiff admits that on several occasions he "gassed" (threw feces and urine on) numerous staff. (Second Am. Compl. at 15; Pl.'s Mot. Summ. J. ¶ 5; Pl.'s Dep. Tr. at 17:10–26, 38:3–7.) Plaintiff's misconduct also included threats of great bodily harm to Centinela staff. (Defs.' Mot. Summ. J. Exs. E–DD.)

By Memorandum Decision,[2] filed on June 4, 1997, this Court: (1) granted in part and denied in part Defendants' motions for summary judgment; (2) denied Plaintiff's motion for summary judgment; and (3) denied Defendants' motion to dismiss. The Court determined that surviving claims and Defendants include: (1) whether Defendants Garcia, Robles, Calvin, Giles, and Tomasetti denied Plaintiff a special diet during the month of Ramadan in 1994, and, if so, whether such denial met the substantial burden test; and (2) whether or not the February 15, 1995 incident with Defendant Viale occurred as Plaintiff alleged, and whether or not these allegations constitute excessive force. All other moving Defendants (McCracken, Morales, Franco, Rock, and Stanifer) were dismissed with prejudice.

Defendants Garcia, Robles, Calvin, Giles, and Tomasetti now move for the Court to Reconsider its Memorandum Decision on the issue of whether Defendants herein denied Plaintiff a special diet during the month of Ramadan in 1994, and, if so, whether such denial met religious exercise standards in view of the recent Supreme Court decision regarding the Religious Freedom Restoration Act of 1993 ("RFRA") in *Boerne v. Flores*, —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).[3]

## II. RECONSIDERATION

■ Federal Rule of Civil Procedure 54(b) states in relevant part, "[A]ny order ... which adjudicates fewer than all the claims

---

1. The court incorporates by reference the background facts delineated in this Court's Memorandum Decision filed June 4, 1997.

2. Defendants and Plaintiff executed a consent form, filed on December 3, 1996, in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, stipulating to have Magistrate

Judge James F. Stiven conduct all further proceedings in the case.

3. This Court addressed the fact that the constitutionality of the RFRA was being decided by the supreme Court in footnote 2 of this Court's Memorandum Decision.

... is subject to revision at any time before the entry of judgment adjudicating all the claims...." Fed.R.Civ.P. 54(b). The Court has discretion to reconsider interlocutory orders at any time prior to final judgment. *California v. Summer Del Caribe, Inc.*, 821 F.Supp. 574, 577 (N.D.Cal.1993) (citations omitted). "Such motions may be justified on the basis of an intervening change in the law, or the need to correct a clear error or prevent manifest injustice." *Id.* (citing *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n. 5 (9th Cir.1989)). "To succeed in a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* (citations omitted). As stated by the Fifth Circuit, "because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *McKethan v. Texas Farm Bureau*, 996 F.2d 734, 738 n. 6 (5th Cir.1993) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990)).

 Here, because the Supreme Court has recently decided that the RFRA exceeds Congress' power and is thus unconstitutional,[4] and because Plaintiff's claims herein at issue are based, in part, on the RFRA, this Court deems the intervening change in law sufficient and good cause to reconsider its previous Decision on Plaintiff's surviving religious exercise claims.[5]

## III. LEGAL STANDARDS

The party moving for summary judgment is "entitled to judgment as a matter of law because the nonmoving party has failed to make sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. § 56(c); *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 951 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The opposing party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. If a nonmoving party bears the burden of proof at trial, he must establish each element of his claim with "significant probative evidence tending to support the complaint." *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir.1994) (citations omitted).

Cross-motions for summary judgment do not necessarily mean that there are no disputed issues of material fact, and do not necessarily permit the judge to render judgment in favor of one side or the other. *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975). The Court must consider each motion separately to determine whether any genuine issue of material fact exists. *Id.* A "material" fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d

---

4. *Boerne v. Flores*, —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997).

5. Plaintiff submitted a document in opposition to Defendants, Motion for Reconsideration, which appears also to request reconsideration. To the extent Plaintiff seeks reconsideration of his claims summarily adjudicated by this court's previous Decision, Plaintiff's Motion is **DENIED**. Plaintiff has failed to show that reconsideration would be appropriate. Plaintiff has not: (1) presented newly discovered evidence; (2) shown the court committed clear error or the initial decision was manifestly unjust; (3) shown an intervening change in controlling law; or (4) shown other highly unusual circumstances exist that warrant reconsideration. *School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993), *cert. denied*, 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994); *see* Fed.R.Civ.P. 59(e).

626, 630 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Although pro se pleadings are construed liberally, pro se litigants are nonetheless bound by the rules of procedure. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir.1995).

Section 1983 imposes two essential proof requirements upon a claimant: (1) that a person acting under color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) *see Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985) (en banc), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). Here, there appears to be no dispute that Defendants, all employees of the California Department of Corrections, acted under color of state law when they allegedly violated Plaintiff's constitutional rights. Thus, this case turns on the second inquiry: whether Defendants wrongfully deprived Plaintiff of any constitutional rights.

With respect to the February 1994 claim, the record indicates that Plaintiff, then in Administrative Segregation ("Ad Seg"), filed an Inmate Appeal claiming he was denied the food diet that general population Muslim inmates had received during Ramadan; the Appeal was granted on May 6, 1994.[6] (Pl.'s Decl. Ex. C or D (unclear); Appeal Log No. CEN–A–94–01146.) The Appeal Response stated that Muslim inmates housed in Ad Seg will be allowed to receive the same food diet that Muslim inmates in the General Population receive during Ramadan. *Id.* Thus, there is some evidence in the record that could be considered "probative evidence

tending to support" Plaintiff's allegation that in 1994, his request for a Ramadan special event diet was not accommodated. *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir.1994).

## IV. RFRA and *SMITH*

The RFRA was adopted as a response to the decision of a majority of the United States Supreme Court in *Employment Div. Dept. of Human Resources of Or. v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). *Smith* held that "neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling interest." *Boerne v. Flores*, —— U.S. ——, ——, 117 S.Ct. 2157, 2161, 138 L.Ed.2d 624 (1997) (construing *Smith*, 494 U.S. at 885, 110 S.Ct. at 1603–04). In *Boerne*, the Supreme Court determined the RFRA to be unconstitutional; contradicting "vital principles necessary to maintain separation of powers." *Id.* at ——, 117 S.Ct. at 2171. Therefore, this Court must determine whether Plaintiff's deprivation of religious practice claims meet the First Amendment Free Exercise standards in place before enactment of the RFRA.

In *Smith*, the Supreme Court held that although a state would be prohibiting the right of free exercise of religion in violation of the First Amendment's Free Exercise Clause if it sought to ban religious acts or abstentions only when they were engaged in for religious reasons, or only because of the religious belief that they display, the right of free exercise does not relieve an individual of the obligation to comply with a valid or neutral law of general applicability on° the ground that the law proscribes (or requires) conduct that is contrary to an individual's religious practice, as long as law does not violate other constitutional protections. 494 U.S. at 877–81, 110 S.Ct. at 1599–1601; *see* U.S. Const. amend. I.

---

**6.** The Appeal states, in relevant part:

Mr. Washington, inmates who are placed in [Ad Seg] sometimes have their privileges somewhat restricted due to safety and security concerns. However, it is not the intention of the administration of Centinela State Prison to deny inmates their participation in religious programs as long as they do not pose a threat

to the safety and security of the institution ... Muslim inmates housed in Administrative Segregation will be allowed to recieve [sic] the same food diet that Muslim inmates in the General Population receive during Ramadon [sic].

Second Level Response to Appeal Log No. CEN–A–94–01146.

Defendants apply the *Smith* standard to analyze the instant case after the Supreme Court's ruling in *Boerne*. However, the Ninth Circuit has characterized *Smith* as holding:

> the free exercise clause is not violated if a law (1) is "generally applicable and otherwise valid," ... (2) does not have as its "object" the burdening of religion and only has an "incidental effect" on religious practices or beliefs, ... (3) does not implicate another constitutional right other than free exercise of religion and thereby give rise to a "hybrid claim," ... and (4) punishes conduct which constitutes a criminal act.

*American Friends Serv. Committee Corp. v. Thornburgh*, 961 F.2d 1405, 1407 (9th Cir. 1992) (quoting *NLRB v. Hanna Boys Ctr.*, 940 F.2d 1295, 1305 (9th Cir.1991) (amended opinion)).

Here, the four requirements are not met. A law punishing conduct which constitutes a criminal act is not at issue, rather Defendants' alleged practice of refusing Plaintiff a special diet while in Ad Seg is at issue. Therefore, because the instant action does not involve a law punishing criminal conduct, *Smith* does not provide the free exercise standards for the instant case.[7]

## V. *TURNER* STANDARD

■ When the Supreme Court declared the RFRA unconstitutional, it struck down the RFRA's "substantial burden" test.[8] Therefore, because this Court based its prior Decision, in part, on the RFRA and the substantial burden test, this Court must review the present case under the proper Free Exercise Clause standards. Upon review of free exercise law before enactment of the RFRA, this Court has determined *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), supplies the correct standard to apply in the instant action.

Ninth Circuit authority supports the application of *Turner*. In *Ward v. Walsh*, the court held that the right to free exercise of religion is "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals, or to maintain prison security." 1 F.3d 873, 876 (9th Cir.1993) (citing *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) and *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261–62). Similarly, in *Swift v. Lewis*, the court held that prison regulations infringing on an inmate's practice of his religion are valid if they are "reasonably related to legitimate penological interests." 901 F.2d 730, 731 (9th Cir.1990) (citing *McCabe v. Arave*, 827 F.2d 634, 637 (9th Cir.1987) (quoting *Turner*, 482 U.S. at 89, 107 S.Ct. at 2261–62)).

In *Turner*, the Supreme Court set forth four factors to consider in determining whether a prison regulation reasonably relates to legitimate penological interests. 482 U.S. at 89–90, 107 S.Ct. at 2261–62; *Friedman v. Arizona*, 912 F.2d 328, 331 (9th Cir. 1990); *Harper v. Wallingford*, 877 F.2d 728, 732 (9th Cir.1989). First, the regulation must have a logical connection to the legitimate government interests invoked to justify it. *Id.* Second, alternative means of exercising the right on which the regulation impinges is assessed. *Id.* Third, the impact that accommodation of the right will have on

---

7. After *Smith* was decided, the Ninth Circuit, in *Friedman v. Arizona*, 912 F.2d 328, 331 n. 1 (9th Cir.1990), stated it had not considered whether prisoner rights have been further limited as a result of *Smith* because the appellants therein could not overcome the test set forth in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Additionally, in *Ward v. Walsh*, the court did not apply *Smith*, stating that "[d]etermining to what extent prison officials must accommodate a prisoner's right to free exercise ... is wholly different from determining whether free citizens must obey criminal laws of general applicability." 1 F.3d 873, 877 (9th Cir.1992), *cert. denied*, 510 U.S. 1192, 114 S.Ct. 1297, 127 L.Ed.2d 649 (1994).

8. To show a free exercise violation under the RFRA's "substantial burden" test, a prisoner had to demonstrate government action burdens his religious practice by preventing him from engaging in conduct or having a religious experience which the faith mandates. *Bryant v. Gomez*, 46 F.3d 948, 949 (9th Cir.1995) (citations omitted). If the prisoner satisfied this burden, the Defendants had to show (1) the burden is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling interest. *Id.;* 42 U.S.C. § 2000bb–1(b).

guards, other inmates, and prison resources is evaluated. *Id.* Finally, the absence of ready alternatives that fully accommodate the prisoner's rights at de minimus cost to valid penological interests is considered. *Id.*

Here, Defendants not only failed to set forth the correct standard, even when directly asked by this Court at oral argument,[9] but also did not present sufficient evidence to rebut Plaintiff's claim. This Court has determined that under the above controlling authority, there remain triable issues of material fact with respect to Plaintiff's free exercise claims.

Plaintiff alleges he was deprived by Defendants Garcia, Calvin, Robles, Tomasetti, and Giles of rights to practice his Muslim religion while confined to Ad Seg in February 1994, in that he was denied his special diet and deprived of his religious events meals during Ramadan. (Washington Decl. ¶¶ 12–16; Second Am. Compl. at 8–9, 13.) On the other hand, Plaintiff testified that many of his allegations with respect to burden on the practice of his religion occurred in 1994, when Centinela first opened (Pl.'s Dep. Tr. at 16:11), after which time Plaintiff stated "a lot" of problems regarding Muslim worship were "cleaned up". (Pl.'s Dep. Tr. 10:20–26).[10] Plaintiff claims that at the end of the day, general population or mainline prisoners were served with religious Suhoor meals, but Ad Sag prisoners were not. Plaintiff contends that he had a right to receive such meals in Ad Seg during the month of Ramadan in 1994. Thus, Plaintiff contends Defendants burdened the practice of his religion by not providing such special event meals in Ad Sag during the month of Ramadan in 1994.

### A. Logical connection to legitimate government interest

Even assuming Plaintiff is able to substantiate his claim of interference with his reli-

gion, Defendants contend the neutral policy of serving regular meals does not violate the Constitution. Further, Defendants contend that Plaintiff's placement in Ad Seg may have reasonably limited some of Plaintiff's religious rights for security reasons. Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial, criminal, and often violent conduct. *Hudson v. Palmer,* 468 U.S. 517, 526, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Certain concerns justify restrictions on the rights of lockdown prisoners such as those placed in Ad Seg at Centinela. *See Lewis v. Casey,* —— U.S. ——, ——, 116 S.Ct. 2174, 2185, 135 L.Ed.2d 606 (1996). Here, Defendants contend in light of Plaintiff's conduct while in Ad Beg, any incidental limitation on his religious practice would not amount to a constitutional violation. However, Defendants have not provided this Court with any evidence that a policy of regular meals in Ad Seg existed in 1994,[11] or that such policy, if it indeed did not accommodate special event meals during the month of Ramadan in 1994, was logically connected to valid penological interests.[12]

### B. Alternative to exercise right

This factor assesses the degree to which a regulation impinges upon a prisoner's asserted right. *Friedman v. Arizona,* 912 F.2d 328, 332 (9th Cir.1990). Here, the current Muslim Imam at Centinela confirms the essence of the Islamic practice is fasting and prayer during daylight hours of Ramadan. (Shabazz Decl. at 2.) Fasting is one of the essential aspects of practicing Islam, but eating a special daily meal is not. *Id.* Defendants contend that because Plaintiff was in Ad Seg during the alleged deprivation, he

---

9. Thus, Defendant did not correctly analyze the facts of the instant action by applying it to the correct law.

10. A court may take into account the fact that a prison may be a new prison, and that such a complex undertaking may have trouble spots, however, Defendants still have an obligation to operate such a prison in a constitutionally acceptable manner. *Madrid v. Gomez,* 889 F.Supp. 1146, 1198 (N.D.Cal.1995).

11. Although Imam Shabazz states it is currently the practice to serve regular meals in Ad Sag, he does not state the practice was in effect in 1994, but states "assuming Plaintiff was served regular meals at his cell . . . ." (Shabazz Decl. at 2.)

12. Unlike Defendants in *Ward v. Walsh,* Defendants herein do not claim that the prison has a legitimate interest in running a simplified food service. 1 F.3d 873, 877 (9th Cir.1993).

was not required to work, and had adequate opportunity to fast and pray, thus was sufficiently able to practice his religion. Therefore, it cannot be said Plaintiff was deprived of "all means of [religious] expression." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 352, 107 S.Ct. 2400, 2406, 96 L.Ed.2d 282 (1987).

Defendants further contend that if Plaintiff was served meals at his cell, which is the current practice for inmates in Ad Seg, Plaintiff had the alternative of saving any food served during the day for consumption during non-daylight hours. (*See* Shabazz Decl. at 2.) However, in reviewing the record, there are many instances in which Plaintiff was not able to save containers in his cell due to his frequent misconduct, which included his gassing of staff. In view of Plaintiff's behavior, it is possible that in consideration of legitimate penological goals and safety concerns associated with Plaintiff's conduct towards staff, Plaintiff may have been denied the alternative of saving his meals. However, Defendants have not provided sufficient evidence that any such burden or interference on his practice was justified by the state's need to preserve institutional order during the month of Ramadan, in 1994. Further, this Court cannot conclude that the opportunity to engage in prayer is enough to satisfy the second *Turner* factor. *Ward,* 1 F.3d at 878. If it were, the factor would have no meaning because an inmate would always be able to pray privately. *Id.* (citations omitted).

### C. Impact of accommodation

Defendants have not presented evidence that to accommodate Plaintiff's request for special event meals during Ramadan would have strained prison resources. To the contrary, Plaintiff has presented evidence that his Prisoner Appeal was granted, thus, it appears that for Muslim Ad Seg inmates to receive the same diet as General Population Muslim inmates during Ramadan 1994 may not have been a difficult accommodation.

### D. Ready alternatives

Plaintiff contends that in 1994, he was denied any type of special meal for Ramadan.

Plaintiff's granted appeal tends to support his claim. Even assuming there was a legitimate interest in not allowing Plaintiff to keep a meal in his cell, other ready alternatives may have existed. The existence of obvious, easy alternatives may be evidence the [policy] is not reasonable. *Ward,* 1 F.3d at 876 (quoting *Turner,* 482 U.S. at 89, 107 S.Ct. at 2261–62). At this stage in the litigation, the court determines Defendant has failed to sufficiently rebut Plaintiff's evidence, and thus the Court cannot determine whether reasonable alternatives existed. *See id.* at 879.

### E. *Turner* analysis conclusion

■ Here, Plaintiff has the burden "to show that the challenged [policy] is unreasonable under *Turner.*" *Gates v. Rowland,* 39 F.3d 1439, 1447 (9th Cir.1994) (citing *Casey v. Lewis,* 4 F.3d 1516, 1520 (9th Cir.1993) (citations omitted)). As stated in this Court's previous Decision, inmates "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt,* 833 F.2d 196, 198 (9th Cir.1987). Further, as stated above, Plaintiff has presented some evidence that could be considered "probative evidence tending to support" Plaintiff's allegation that in 1994, his request for a Kosher special event meal was not accommodated during early 1994. *Barnett v. Centoni,* 31 F.3d 813, 815 (9th Cir.1994).

Therefore, at this stage, the Court determines that Plaintiff's submissions are sufficient to raise a material issue of fact as to whether Defendants denied Plaintiff a special diet during the month of Ramadan in 1994, and, if so, whether such denial met the reasonable relation test as set forth in *Turner.*

### VI. QUALIFIED IMMUNITY

■ An officer is entitled to qualified immunity so long as his or her actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The qualified immunity standard requires a two-step analysis: (1) Was the law governing

the official's conduct clearly established?; and (2) Under that law, could a reasonable officer have believed the conduct was lawful? *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir.1993).

In *May v. Baldwin*, the Ninth Circuit held that "[a] right is clearly established for the purposes of qualified immunity if, at the time the right was allegedly violated, its contours were 'sufficiently clear that a reasonable official would understand that what he was doing violates that right.'" 109 F.3d 557, 561 (1997), *petition for cert. filed*, —— U.S.L.W. —— (U.S. Jun. 16, 1997) (No. 97–5615) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). "In 1994, at the time of the alleged constitutional violations, it was well established that prisoners retained the protections of the free exercise clause." *Id.; see O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987). Further, it was well established that inmates "have a right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion...." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir.1987). Therefore, as stated in this Court's prior order, under the existing standards at the time in question, Plaintiff's right to a special meal during Ramadan may have been clearly established, thus supporting a finding that Defendants are not entitled to qualified immunity at this stage of the proceedings.

■ Where the law is clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct. *Harlow*, 457 U.S. at 818–19, 102 S.Ct. at 2738–39. However, it may be appropriate for the trier of fact to consider information possessed by the prison officials at the time of the alleged violations.[13] *May*, 109 F.3d at 562 (citing *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40). Defendants contend Plaintiff has failed to demonstrate that any of Defendants herein were aware of a specific requirement that Plaintiff be given a religious meal in order to practice his religion.

Further, Defendants contend in light of the security concerns over Plaintiff's conduct, it cannot be said a reasonable officer would have made a greater attempt to enable Plaintiff to practice his religion. While Plaintiff did present serious security concerns, Defendants have not shown how security concerns entitle Defendants to qualified immunity. The question of fact remains whether a reasonable prison official would have believed that not serving Plaintiff special meals during Ramadan violated Plaintiff's rights under the established standards at the time in question.

## VII. SUPERVISORY LIABILITY UNDER SECTION 1983

■ A person deprives another "of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978). There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437–38 (9th Cir.1993). The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *See Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir.1988) *Berg v. Kincheloe*, 794 F.2d 457, 460 (9th Cir.1986).

Thus, to avoid the respondeat superior bar, the plaintiff must allege personal acts by the defendants which have a direct causal connection to the constitutional violation at issue. *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir.1986). Section 1983 provides for relief only against those who, through their personal involvement as evidenced by affirmative acts, participation in another's affirmative acts, or failure to perform legally required duties, cause the deprivation of the

---

**13.** Additionally, in assessing the knowledge of the various Defendants, it may be appropriate to take into account that Centinela was, in February 1994, a relatively new prison. *Cf. Madrid v. Gomez*, 889 F.Supp. 1146, 1198 (N.D.Cal.1995), *supra* note 10.

plaintiffs' constitutionally protected rights. *Johnson,* 588 F.2d at 743.

 Defendants contend Plaintiff has failed to demonstrate that Warden Garcia, Associate Warden Giles, Program Administrator Tomasetti, Dr. Calvin, and Sergeant Robles specifically interfered with his right to practice his religion during the month of Ramadan in 1994, and has failed to met forth facts proximately connecting the individual Defendants to the losses he claims to have suffered. *Palmer v. Sanderson,* 9 F.3d 1433, 1438 (9th Cir.1993).

Plaintiff alleges that Defendants Garcia, Robles, and Tomasetti are generally responsible for ensuring the spiritual welfare of inmates. (Pl.'s Second Am. Compl. ¶ 3, at 8.) To this extent Plaintiff has sufficiently alleged that these Defendants had a duty, the alleged failure of which caused Plaintiff the deprivation of his right to practice his religion. After a review of the record, this Court finds that Plaintiff has set forth evidence, including Inmate Appeal forms, creating a triable issue of fact as to whether Defendants Garcia, Robles, Tomasetti, as well as Defendants Giles and Calvin (against whom Plaintiff has made non-supervisory allegations), deprived Plaintiff of his right to practice his religion with respect to failing to provide Plaintiff with religious event meals during the month of Ramadan in 1994. Defendants, again, have not provided this Court with any evidence which directly refutes these claims.

## VIII. CONCLUSION

For the foregoing reasons, this Memorandum Decision is issued **DENYING DEFENDANTS' MOTION FOR RECONSIDERATION [117–1].** Plaintiff's surviving claims relating to religious exercise include whether Defendants Garcia, Robles, Calvin, Giles, and Tomasetti denied Plaintiff a special diet during the month of Ramadan in 1994, and, if so, whether such denial met the test set forth in *Turner.*