**UNITED STATES JAYCEES, a Missouri Corporation, et al., Plaintiffs-Appellees,**

v.

**SAN FRANCISCO JUNIOR CHAMBER OF COMMERCE, a California Corporation, et al., Defendants-Appellants.**

No. 73–1451.

United States Court of Appeals, Ninth Circuit.

March 21, 1975.

As Amended on Denial of Rehearing May 1, 1975.

H. Paul Breslin (argued), San Francisco, Cal., for appellant.

John P. Sutton (argued), of Limbach, Limbach & Sutton, San Francisco, Cal., for appellee.

Before MERRILL, ELY and INGRAHAM,* Circuit Judges.

### OPINION

PER CURIAM:

The judgment is affirmed on the basis of the district court's opinion, United States Jaycees v. San Francisco Jr. Cham. of Com., 354 F.Supp. 61 (N.D.Cal. 1972).

Affirmed.

ELY, Circuit Judge (concurring):

I agree that the judgment of the District Court must be affirmed. Its opinion is carefully reasoned, but I wish to add a few words of my own.

The dissenting opinion of my Brother Merrill is entirely correct in noting that

a term that is generic (the name of a product or service itself) cannot function as a trademark to indicate origin. Thus, for example, while "Dial" or "Ivory" or "Lifebuoy" can function as trademarks, the word "soap" cannot. The test is "what does the public think the word connotes—the generic name of the product or a mark indicating merely one source of that product?" 1 J. McCarthy, Trademarks and Unfair Competition 407 (1973) (footnote omitted). From this premise my dissenting Brother reasons that because the term "chamber of commerce" is listed in Webster's Dictionary (defined as a group of businessmen united to promote the commercial and industrial interests of a community, state or nation), the term "Junior Chamber of Commerce" is a generic term used in a common descriptive sense. Even if a secondary meaning attaches to a generic term, argues the dissent, it is still not protectible.

The appellant's position in the District Court was that the term "Junior Chamber of Commerce" was "descriptive" and "generic." (354 F.Supp. at 74.) However, the District Court found that "as applied to these civic improvement services, the designations 'Junior Chamber of Commerce,' 'Junior Chamber,' 'Jaycees,' and 'J.C.'s' indicate to the public that the civic services associated with these designations emanate from either National, its component state organizations including State, its affiliated local chapters, or individual members acting on behalf of one of the affiliate organizations." 354 F.Supp. at 76.)[1]

To me it seems clear that the term "Junior Chamber of Commerce" does refer to the specific source of a "product" (the National/Jaycees), and is not commonly understood as merely a generic

---

* Honorable Joe McDonald Ingraham, Senior Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

1. As the District Court correctly noted, ". . . the mere existence of a disputed fact is not sufficient to defeat a motion for summary judgment; there must be a genuine issue for trial." 354 F.Supp. at 69. After a careful re-

view of the evidence, the district judge found that ". . . all of the facts relevant to the motions for summary judgment are now before the Court and are fully developed with the legal issues squarely presented. Under such circumstances the trial of the case would develop no further facts which would in any way alter this Court's decision." 354 F.Supp. at 69.

term describing *any* group of young men pursuing civic betterment.

In conclusion, I note that if the dissenting opinion were the law, then any new group in San Francisco could adopt the "Junior Chamber of Commerce" appellation, provided the additional users added some "distinguishing" qualification to "avoid confusion." (E. g., it can be imagined that new groups calling themselves such names as the "Chicano Junior Chamber of Commerce," the "White-American Junior Chamber of Commerce," and the "Marxist Junior Chamber of Commerce" could all spring up.) To allow any and every such new organization to so misappropriate the goodwill and prestige established over the years by the National organization would, I submit, be manifestly wrong.

MERRILL, Circuit Judge, (dissenting):

This is an action arising under the trade-mark laws. Appellees United States Jaycees and California State Junior Chamber of Commerce have alleged infringement of certain registered marks and unfair competition by appellant, San Francisco Junior Chamber of Commerce,[1] with jurisdiction conferred by 28 U.S.C. § 1338. Upon appeal the only issue of moment is the contention of appellees that they have a common-law right to exclusive use of the unregistered name "Junior Chamber of Commerce."

Conceding that such name is not inherently distinctive, but is descriptive (and thus was not entitled to protection immediately upon adoption and use), appellees contend that distinctiveness has been acquired through the attaching of secondary meaning. They alleged:

"Plaintiffs have extensively advertised and publicized the name and mark 'Junior Chamber of Commerce'

and variations thereof throughout the United States and the State of California. * * *

"Plaintiffs' organization and its member organizations have met with widespread popular approval and as a result of the extensive advertising and publicized activities, the names, marks and designations 'Junior Chamber of Commerce', 'Jaycees', and 'J.C.'s' and variations thereof have come to mean and are understood throughout the United States, including the State of California and the City of San Francisco, to mean Plaintiffs and their member organizations only."

The Junior Chamber of Commerce movement began in St. Louis, Missouri, in 1915, when a group of young men organized under the name of the "Young Men's Progressive Civic Association." The name was later changed to "Junior Citizens." In 1918 the association affiliated with the St. Louis Chamber of Commerce and officially became known as the Junior Chamber of Commerce. In 1920 the "United States Junior Chamber of Commerce" was organized and, with the passage of time, has become a fully integrated organization made up of state divisions and local chapters. It operated continuously under that name until 1965, when the name was changed to "United States Jaycees."[2] The movement has now become worldwide. In 1926 appellee California State Junior Chamber of Commerce was organized; it was chartered by the national organization on January 15, 1927.

Appellant San Francisco Junior Chamber of Commerce was originally organized as a division of the San Francisco Chamber of Commerce in October, 1927. It has been in existence under that name ever since.[3] In 1928 it affiliated with

1. Although throughout I refer, in the singular, to San Francisco Junior Chamber of Commerce as the appellant, there actually are two appellants. San Francisco Junior Chamber of Commerce Charitable Foundation, an organization alleged to be under the control of San Francisco Junior Chamber of Commerce, was also named as defendant and also appeals.

2. A question is presented as to whether this constituted an abandonment of any name or

mark that may have attached to the old name while in actual use. My conclusion makes it unnecessary for me to reach this question.

3. A question may arise as to whether the record establishes that secondary meaning had attached to appellees' names in the San Francisco area at the time appellant commenced the use of its own name; and, if not, the significance of that fact. My conclusion makes it unnecessary for me to reach this question.

the California state organization. In 1930 it affiliated with the national organization.

In 1970 appellant disaffiliated from the state and national organizations. The district court found that its reasons for doing so were "primarily because the majority of its members felt that they did not receive sufficient value for the dues paid to plaintiffs, and also because of disagreement with National with respect to philosophy and public positions taken by National." United States Jaycees v. San Francisco Junior Chamber of Commerce, 354 F.Supp. 61, 64 (N.D.Cal. 1972). Appellant's charters of affiliation were then revoked by both National and State.

This suit was brought in October, 1970. After submission of affidavits and exhibits the district court granted summary judgment to appellees enjoining appellants from continuing to use:

"1. The name or designation, 'San Francisco · Junior Chamber of Commerce,'

2. The abbreviation of that name, 'SFJCC,'

3. The designation 'Junior Chamber of Commerce,'

4. The designation 'Junior Chamber,'

5. The designation 'Jaycees,'

6. The designation 'Jaycee,'

7. The designation 'J.C.'s,' and

8. The designation 'J.C.'"

*Id.* at 78–79 (footnote omitted).

I concern myself with the first four appellations. As to them I cannot accept this result.

The district court found as fact that the words "Junior Chamber of Commerce," as applied to civic improvement services such as those performed by appellees, had come to indicate to the public that such services emanate from National, its affiliated state and local organizations, or individual members of such organizations. *Id.* at 66. It concluded from this that secondary meaning had attached to the term identifying it with the appellees and giving to appel-

lees the exclusive right to use of the term. *Id.* at 67–68. I regard the finding as open to serious question. However, even accepting the finding, I would hold the conclusion to be error.

The weakness of "junior chamber of commerce" is not that it is a descriptive term lacking distinctiveness, but still capable of acquiring distinctiveness through the attaching of secondary meaning. It is, and was when first used by appellees, a generic term, used in its generic sense as a "product name"— name of the type of product or, as here, type of organization or service—rather than as a term indicating source or origin of the "product." As such it was not, under any circumstances, subject to exclusive appropriation.

In 1 J. McCarthy, Trademarks and Unfair Competition 405–06 (1973), it is stated:

"The name of a product or service itself—what it is—is the very antithesis of a mark. In short a generic name of a product can never function as a trademark to indicate origin. The terms 'generic' and 'trademark' are mutually exclusive. * * *

*    *    *    *    *    *

* * * Thus, if, in fact, a given term is 'generic', it can never function as a mark to identify and distinguish the products of only one seller. * *

Generic names are regarded by the law as free for all to use." (footnote omitted)

The author states that the essential question in determining whether a term is being used in a generic sense is: "what does the public think the word connotes—the generic name of the product or a mark indicating merely one source of that product?" *Id.* at 407 (footnote omitted).

The fact that a term is to be found in the dictionary as a product name is not, of course, determinative. Its presence in a dictionary suggests that it has an accepted meaning; that generic sense attaches to it. But a dictionary term can be used in such a sense—wholly apart

from its recognized meaning—as to constitute an inherently distinctive mark. It is the sense in which the term is used that is determinative. If used in its generic sense—in accord with its accepted meaning (that meaning being a product name)—it cannot attain the status of a mark at all. McCarthy states:

"A mark answers the buyer's question 'Who are you? Where do you come from ?'. But the name of the product answers the question 'What are you?' "

*Id.* at 405–06.

For this reason, where a product name appears in a mark or trade name used in its generic sense, it almost invariably is qualified by a distinctive or descriptive term providing source identification and converting the "what" to a "who."

"Junior chamber of commerce," standing alone, answers only to "what."

I take judicial notice of the fact that common usage, at all times here relevant, attached generic meaning to "chamber of commerce." That term is defined in Webster's New International Dictionary (3d ed. 1961): "an association of businessmen to promote the commercial and industrial interests of a community, state, or nation."[4]

Here that root term is qualified by the word "junior." It must be noted, however, that the qualifying word is not used so as to give indicia of source—to distinguish one chamber of commerce

from all others.[5] Instead it serves to change the class of things for which the term acts as name.[6] It lends generic and limiting sense in the way that such terms as "lefthanded" or "wooden" or "six-inch" do. It does not serve to segregate out an identifiable unit of the named class—the purpose of a trade name. Rather it creates a new and lesser class of things to all members of which it applies. The term now is a new product name or common descriptive name with new generic sense. A junior chamber of commerce now will call itself by that name because that is what it is: a group of young men pursuing the same sort of community purposes as are pursued by their seniors.[7]

This is not to say that secondary meaning can never attach to an unqualified product name used in its generic sense. There have been cases where one source has appropriated the generic name of its product and where extensive use has resulted in public association of the term with the user as its sole source.

Nevertheless in such a case I would hold that secondary meaning cannot operate upon a product name in the manner in which it operates upon a descriptive term. It cannot, without some source-identifying qualification, convert the term into a trade name or mark and give to the user the exclusive right to use of the term.

4. In the second edition, 1934, the term is defined: "A board or association to promote the commercial interests of a locality, a country or the like." In the first edition, 1910, under "chamber" is found: "c. of commerce, a board or association to protect the interests of commerce, chosen from among the merchants and traders of a city."

5. "*United States* Junior Chamber of Commerce" does answer the "who" (or "which") question. With the addition of that geographical qualification distinguishing *that* junior chamber of commerce from all others, the name taken as a whole could attain distinctiveness through secondary meaning. Should another association start to call itself by precisely this name it might well be halted.

6. "Junior" is recognized in the third edition of Webster as a comparative term: "less ad-

vanced in age"; or, when referring to a collective term, as here, "composed of juniors," as the *junior* class. "Junior college" and "junior high school" are both terms receiving dictionary recognition.

7. The district court notes the activities of United States Jaycees and its affiliates as those of "organizing and holding meetings, competitions, and other special events for young men interested in the affairs and improvement of their communities, with the purpose of fostering interest in community betterment programs at the local, state and national levels, as well as offering leadership experience to the members." 354 F.Supp. at 64. This to me is little more than elaboration on the common usage as recognized by Webster. Certainly it is not so far removed from the sense conveyed by the combination of two familiar terms as to constitute the result a distinctive term.

This is not because the user has any less right to use of the term than he has to use of any other term. It is because he cannot deprive others of *their* right to the use of the term. In my judgment one cannot, by investing in as many millions of dollars worth of television advertising as may be necessary to create public association, purchase for himself the ownership of a product name and the exclusive, permanent right to call his product what it is. I would not permit such diminution of language through private acquisition.

Here, then, accepting that secondary meaning has attached to "junior chamber of commerce" as found by the district court, this would not serve to deprive appellant of the use of that term as part of its appellation. It would at the most place upon appellant a duty to qualify the term in such a manner as to identify itself apart from all others who may be using the same term. This appellant has done by adopting the geographical qualification "San Francisco."

Appellees, however, claim that this does not eliminate confusion; that any use of the term, no matter how qualified, would result in confusion for the reason that qualifying or distinguishing terms have been so universally used by their affiliates to distinguish among themselves that such terms can no longer distinguish an unaffiliated outsider.

To me this serves only to point up the fact that appellees claim too much. They claim what amounts to ownership of the product name itself; and that no other group in its appellation, even with identifying qualification, can any longer call itself that which it is. If this be so, then this product name is lost to the public. I cannot accept this result.

Accordingly I would hold that he who seeks to attach secondary meaning to a product name must assume the burden of preserving room for continuing public use of the language he has adopted. He cannot require of a second user more

than ordinary, descriptive, source-identifying language such as is here utilized by appellant. If public confusion persists, such confusion is the responsibility of the first user and the burden of resorting to more cumbersome means of identification and disassociation or of reverting to distinctive appellation should fall on him.[8]

Nor is the situation changed by the fact that here appellees were the first to use the term "junior chamber of commerce" or to create such a group. This does not serve to deprive the term of its character as a product name. One who first conceives a left-handed moustache cup has no title to the product name even though, through lack of competitive interest or otherwise, he is the only source of that amenity.

Nor are greater rights created here by the fact that the national association has initiated certain programs with which it has become associated in the public mind and which it may be able to prevent unauthorized groups from appropriating, or by the fact that it may have publicly adopted certain political or philosophical positions with which the public has come to associate it. This does not give rise to a right to appropriate a product name and to preclude from use of it all groups who do not desire to buy the programs sponsored by the appropriator or who do not accept its philosophical outlook.

The district court, as one basis for its decision, concluded:

"Any rights which defendant SFJCC might have had independent of National and State to the use of the designations 'Junior Chamber of Commerce,' 'Junior Chamber,' 'Jaycees,' 'J.C.'s' and 'J.C.' were merged with the rights of the plaintiff organizations upon defendant SFJCC's affiliation."

354 F.Supp. at 66. This would seem to imply that prior to affiliation with appellees, appellant had a perfectly good right to the use of its name, which right it lost by affiliation (save, of course, during the

---

8. Contra, R. Guastavino Co. v. Comerma, 184 F. 549 (C.C.S.D.N.Y.1911), modifying 180 F. 920 (C.C.S.D.N.Y.1910), with which I respectfully disagree.

period of affiliation). If such can be the result it must, in my judgment, be by consent or agreement.

As authority the district court relied on cases in which such consent was explicit, could fairly be implied from the course of the relationship of the parties, or was not relevant because the defendant had no rights of prior use. For example, in The National Board of the Young Women's Christian Ass'n v. Young Women's Christian Ass'n of Charleston, 335 F.Supp. 615 (D.S.C.1971), it appeared that Charleston Y.W.C.A. had subscribed to the national constitution by which it explicitly gave up the right to use of name and symbol should it disaffiliate from the National. Charleston had questioned the authority of its officers to enter into such an agreement, but the court found ratification by acquiescence. *Id.* at 626.[9]

The facts of this case are quite different. Here the by-laws of United States Jaycees contained no such provision at the time of appellant's affiliation or at any time during affiliation (they were, however, amended so to provide after appellant's disaffiliation). I cannot agree that "merger" resulted under these circumstances.

For these reasons I would reverse the judgment of the district court as to the right of the appellant to use of its name.

*On Petition for Rehearing*

The Petition for Rehearing is denied.

Judge MERRILL would grant rehearing to decide whether the existence of issues of fact render summary judgment improper and whether, upon that question, this case can be distinguished from Starsky v. Williams, 512 F.2d 109 (9th Cir.1975).[1]

---

9. Consent to surrender any prior rights to use of a term could fairly be implied in Grand Lodge Improved, Benevolent, Protective Order of Elks of the World v. Eureka Lodge No. 5, Independent Elks, 114 F.2d 46, 48 (4th Cir.), cert. denied, 311 U.S. 709, 61 S.Ct. 319, 85 L.Ed. 461 (1940), and the defendants had no prior rights in Purcell v. Summers, 145 F.2d 979, 982, 987 (4th Cir. 1944); Talbot v. Independent Order of Owls, 220 F. 660, 661 (8th Cir. 1915); and Order of Owls v. Owls Club, 99 F.Supp. 555, 557 (W.D.Pa.1951). *See also* International Comm. of Young Women's Christian Ass'ns v. Young Women's Christian Ass'n, 194 Ill. 194, 62 N.E. 551, 552 (1901).

1. The majority believes that its disposition of the appeal is in no way inconsistent with our court's recent decision in Starsky v. Williams, 512 F.2d 109 (9th Cir.1975), cited by Judge Merrill. In *Starsky* our court, reviewing

the entry of judgment upon cross motions for summary judgment, held that even if it were assumed *arguendo* that the district judge *did* resolve genuinely disputed issues of material fact, the district judge nevertheless acted properly because the parties had in effect submitted the case to the court for trial on an agreed statement of facts embodied in a limited record. The trial judge was thus entitled to resolve any remaining disputed factual issues.

Although it might be possible for us to bring the present case within *Starsky,* because this case also involved motions for summary judgment by both parties and two comprehensive agreed statements of fact bringing "all the [relevant] facts . . . before the [c]ourt" (354 F.Supp. at 69), we find it unnecessary to do so because we agree with the District Court that no genuine issue of material fact, requiring trial, was presented.