FILIPINO YELLOW PAGES, INC., a corporation, Plaintiff-counter-defendant-Appellant,

v.

ASIAN JOURNAL PUBLICATIONS, INC., a corporation; Roger Lagmay Oriel; Cora Macabagdal Oriel, Defendants-counter-claimants-Appellees.

No. 98–55366.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 27, 1999.

Filed Dec. 6, 1999.

Robert Asa Crook (argued), Bander
Law Firm, Los Angeles, California, for the
plaintiff-appellant.

Willmore F. Holbrow, III (argued), Dennis G. Martin, Blakely, Sokoloff, Taylor &
Zafman, Los Angeles, California, for the
defendants-appellees.

Before: O'SCANNLAIN,
FERNANDEZ, and T.G. NELSON,
Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the publisher
of a telephone directory for the Filipino–
American community can establish that
the term "Filipino Yellow Pages" is protectible under trademark law.

I

Roger Lagmay Oriel and Oscar Jornacion were partners in four businesses between 1982 and 1986. One of these businesses, Fil–Am Enterprises, Inc. ("Fil–
Am"), published the *Filipino Directory of
California*, a telephone directory directed
primarily at the Filipino–American community of Southern California. In December 1986, Oriel and Jornacion terminated
their business relationship and divided up
their business interests through execution
of a "Shareholders' Buy Out Agreement"
("the Agreement"). Under the Agreement, Oriel acquired complete ownership
of Fil–Am's telephone directory business,
and Jornacion agreed not to compete "in
the Filipino Directory (Filipino Yellow
Pages) [market] in California" for three
years.

Oriel, as owner of Fil–Am, continued to
publish the *Filipino Directory of California* until 1991. Between 1991 and 1993,
Fil–Am joined two partners to publish a
telephone directory known as the *Filipino
Directory of the U.S.A. and Canada*. In
1993, Fil–Am sold its interest in the *Filipino Directory of the U.S.A. and Canada*.
Oriel and his wife, Cora Macabagdal Oriel,
then formed a new corporate entity, Asian
Journal Publications, Inc. ("AJP"). Since
1994, AJP has published a telephone directory called the *Filipino Consumer Directory*.

Pursuant to the Agreement's non-compete provision, Jornacion did not participate in the Filipino–American telephone
directory market between December 1986
and December 1989. Jornacion reentered
the market in 1990 by forming the Filipino
Yellow Pages, Inc. ("FYP"), publisher of a
directory called the *Filipino Yellow Pages*.
FYP's *Filipino Yellow Pages*, AJP's *Filipino Consumer Directory*, and the *Filipino Directory of the U.S.A. and Canada*
currently compete in the Filipino–American telephone directory market in Califor-

nia. A directory unaffiliated with FYP's directory, also called the *Filipino Yellow Pages,* is marketed to the Filipino–American community in the eastern United States by Kayumanggi Communications, Inc.

AJP's *Filipino Consumer Directory* has a white-pages section, which contains general reference information as well as a listing of people and organizations affiliated with the Filipino–American community. The *Filipino Consumer Directory* also has a yellow pages section containing information about businesses serving the Filipino–American community. AJP periodically uses the term "Filipino Consumer Yellow Pages" in print advertisements directed at potential advertisers. These advertisements either reference the full name of the directory or are found within the *Filipino Consumer Directory* itself.

In June 1996, two months before it sued AJP for trademark infringement, FYP applied for registration of "Filipino Yellow Pages" with the Patent and Trademark Office ("PTO"). In December 1996, the PTO refused registration of "Filipino Yellow Pages." The PTO stated: "The proposed mark merely describes the goods and the nature and intended audience for the goods. Accordingly, the mark cannot be registered on the Principal Register based solely on an intent to use the mark in Interstate Commerce." The PTO informed FYP that because its application "indicate[d] use of the mark for a significant time," however, FYP could amend its application to seek registration based on acquired distinctiveness. The PTO further advised FYP that its amended application would have to include the following disclaimer: "No claim is made to the exclusive right to use [the term] 'yellow pages' apart from ['Filipino Yellow Pages']." FYP subsequently amended its application for trademark registration to seek registration based on acquired distinctiveness.

FYP's application for trademark registration remains pending at the current time.[1]

On August 2, 1996, FYP filed a complaint against AJP, Oriel, and Macabagdal–Oriel (collectively, "AJP") in the Central District of California. FYP alleged the following causes of action: (1) trademark infringement; (2) false designation of origin and false description of sponsorship or affiliation; (3) unfair competition and misappropriation of goodwill, reputation, and business properties; (4) misappropriation of FYP's right of publicity; (5) injury to business relationships; (6) unfair competition under California state law; and (7) trademark dilution under California state law.

AJP moved for summary judgment, arguing that the term "Filipino Yellow Pages" is generic and as such incapable of trademark protection. In support of this contention, AJP relied upon:

1. the presence in the dictionary and generic nature of the individual terms "Filipino" and "yellow pages";

2. Jornacion's own generic use of the term "Filipino Yellow Pages" in the Agreement with Oriel, in which Jornacion "agree[d] not to compete in the Filipino Directory (Filipino Yellow Pages) [market] in California. . . .";

3. the marketing of a second *Filipino Yellow Pages,* that of Kayumanggi Communications, to the Filipino–American community on the East Coast; and

4. generic usage by the media of the term "Filipino Yellow Pages," in a *Los Angeles Times* article on specialty yellow pages which stated as follows: "Virgil Janio of Los Angeles sells ads nationwide for his Filipino yellow pages. . . ."

In opposing the motion for summary judgment, FYP contended that "Filipino Yellow Pages," rather than being generic,

---

**1.** AJP is opposing FYP's trademark application before the Trademark Trial and Appeal Board, in an opposition proceeding that has been stayed pending this appeal.

is protectible under trademark law as a descriptive mark with a secondary meaning in the minds of consumers (i.e., as specifically referring to FYP's telephone directory). As evidence of secondary meaning, FYP offered the declaration of Jornacion, its founder and president. In his declaration, Jornacion claimed that FYP "has been directly injured by [defendant AJP's] unauthorized use of [FYP's] directory name," suffering lost revenues of at least $82,000; that he "received numerous calls from the defendant's advertisers who were upset that their respective advertisements had not been properly placed"; and that the term "Filipino Yellow Pages" has acquired secondary meaning within the Filipino–American community. Jornacion was unable to identify any of the advertisers who supposedly contacted him to complain of incorrect placement of their advertisements. AJP objected to Jornacion's testimony regarding lost revenues and advertiser confusion as lacking a proper foundation, and the district court sustained these objections, striking from the record the challenged portions of the Jornacion declaration.

On November 26, 1997, the district court granted AJP's motion for summary judgment. The district court held that (1) the term "Filipino Yellow Pages" is generic, and as such incapable of serving as a trademark; and (2) even if the term were descriptive, AJP would still be entitled to summary judgment because FYP had failed to produce any admissible evidence of secondary meaning.[2] On January 16, 1998, the district court entered a judgment in which it dismissed FYP's trademark claims with prejudice and dismissed FYP's other claims without prejudice, subject to refiling in state court.

FYP timely appealed.

## II

The first issue presented is whether the term "Filipino Yellow Pages" is generic

with respect to telephone directories targeted at the Filipino–American community. If the term is generic, it cannot be the subject of trademark protection under any circumstances, even with a showing of secondary meaning.

### A

■ Before proceeding to the merits, a word on the burden of persuasion is appropriate. In cases involving properly registered marks, a presumption of validity places the burden of proving genericness upon the defendant. *See* 15 U.S.C. § 1057(b) ("A certificate of registration of a mark . . . shall be prima facie evidence of the validity of the registered mark. . . ."). If a supposedly valid mark is not federally registered, however, the plaintiff has the burden of proving nongenericness once the defendant asserts genericness as a defense. *See, e.g., Blinded Veterans Ass'n v. Blinded American Veterans Found.*, 872 F.2d 1035, 1041 (D.C.Cir.1989); *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 297 (3d Cir.1986); *Conference of Bar Examiners v. Multistate Legal Studies*, 692 F.2d 478, 488 (7th Cir.1982); *Intel Corp. v. Advanced Micro Devices, Inc.*, 756 F.Supp. 1292, 1295 (N.D.Cal.1991); 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 12:2 (2d ed.1984). The case at bar involves a claimed mark that is unregistered; FYP has not yet been successful in its attempts to register "Filipino Yellow Pages" with the PTO. Thus FYP, as trademark plaintiff, bears the burden of showing that "Filipino Yellow Pages" is not generic.

### B

■ Case law recognizes "four different categories of terms with respect to trademark protection: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful." *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.*, 601

---

**2.** We review a district court's grant of summary judgment de novo. *See Newbery Corp. v.* *Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir.1996).

F.2d 1011, 1014 (9th Cir.1979) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976) (Friendly, J.)). Only the first two of these four categories are at issue in the present appeal. AJP contends that "Filipino Yellow Pages" is a generic term and as such incapable of trademark protection, while FYP argues that the term is protectible as a descriptive term with secondary meaning.[3]

■ "A 'generic' term is one that refers, or has come to be understood as referring, to the genus of which the particular product or service is a species. It cannot become a trademark under any circumstances." *Surgicenters*, 601 F.2d at 1014 (citing *Abercrombie*, 537 F.2d at 9–10). As explained by one commentator, a generic term is "the name of the product or service itself—what [the product] is, and as such ... the very antithesis of a mark." 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 12:1[1] (4th ed.1997). Courts sometimes refer to generic terms as "common descriptive" names, the language used in the Lanham Act for terms incapable of becoming trademarks. *Park 'N Fly, Inc., v. Dollar Park and Fly, Inc.*, 718 F.2d 327, 329 (9th Cir.1983), *rev'd on other grounds*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985).

■ A descriptive term, unlike a generic term, can be a subject for trademark protection under appropriate circumstances. Although descriptive terms generally do not enjoy trademark protection, a descriptive term can be protected provided that it has acquired "secondary meaning" in the minds of consumers, i.e., it has "become distinctive of the [trademark] applicant's goods in commerce." *Abercrombie*, 537 F.2d at 10 (quoting 15 U.S.C. § 1052(f)). Courts sometimes refer to descriptive

terms as "merely descriptive" terms (as opposed to generic or "common descriptive" terms). *Park 'N Fly*, 718 F.2d at 329.

■ In determining whether a term is generic, we have often relied upon the "who-are-you/what-are-you" test: "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you?'" *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir.1993) (quoting 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 12.01 (3d ed.1992)). Under this test, "[i]f the primary significance of the trademark is to describe the *type of product* rather than the *producer*, the trademark [is] a generic term and [cannot be] a valid trademark." *Anti–Monopoly, Inc. v. General Mills Fun Group*, 611 F.2d 296, 304 (9th Cir.1979) (emphases added).

■ Here the parties do not dispute that "Filipino" and "yellow pages" are generic terms. The word "Filipino" is a clearly generic term used to refer to "a native of the Philippine islands" or "a citizen of the Republic of the Philippines." *Webster's Ninth New Collegiate Dictionary* 462 (1986). The term "yellow pages" has been found to be a generic term for "a local business telephone directory alphabetized by product or service." *AmCan Enters., Inc. v. Renzi*, 32 F.3d 233, 234 (7th Cir.1994) (Posner, J.) (citing cases, and noting that "yellow pages," which originally was not a generic term, has become generic over time); *see also Webster's Ninth New Collegiate Dictionary* 1367 (defining "yellow pages" as "the section of a telephone directory that lists businesses

3. FYP does not claim (nor could it do so successfully) that "Filipino Yellow Pages" can qualify for trademark protection as a suggestive mark, in which case it could be protected without a showing of secondary meaning. A term is suggestive if "imagination" or a "mental leap" is required in order to reach a conclusion as to the nature of the product

being referenced. *Self–Realization Fellowship Church v. Ananda Church of Self–Realization*, 59 F.3d 902, 911 (9th Cir.1995); *Surgicenters*, 601 F.2d at 1019 (internal quotation marks omitted). No imagination or mental leap is required to ascertain that the *Filipino Yellow Pages* is a telephone directory targeted at the Filipino–American community.

and professional firms alphabetically by category and that includes classified advertising"). The district court further noted, as shown by FYP's application for trademark registration, that the PTO requires the use of a disclaimer regarding rights to the term "yellow pages" whenever it is used as part of a registered trademark.

The issue then becomes whether combining the generic terms "Filipino" and "yellow pages" to form the composite term "Filipino Yellow Pages" creates a generic or a descriptive term. AJP argues, and the district court concluded, that "Filipino Yellow Pages" is generic based on this court's analysis in *Surgicenters of America, Inc. v. Medical Dental Surgeries Co.,* 601 F.2d 1011 (9th Cir.1979). In *Surgicenters,* we held that the term "surgicenter" was generic and that the plaintiff's registered service mark had to be removed from the trademark register. In our discussion in *Surgicenters,* we summarized (but did not explicitly adopt) the analysis of the district court in that case, which reasoned that "surgicenter," created by combining the generic terms "surgery" and "center," retained the generic quality of its components. *Id.* at 1015. We distinguished "surgicenter" from the composite term "Startgrolay," upheld as a valid mark for poultry feed, by noting that the combination of terms in "surgicenter" did not constitute a "deviation from normal usage" or an "unusual unitary combination." *Id.* at 1018. Nowhere in *Surgicenters* did we hold, however, that a composite term made up of generic components is automatically generic unless the combination constitutes a "deviation from normal usage" or an "unusual unitary combination."

In reaching our conclusion of genericness in *Surgicenters,* we placed significant but not controlling weight on the dictionary definitions and generic nature of "surgery" and "center." We explained that "[w]hile not determinative, dictionary definitions are relevant and often persuasive in determining how a term is understood by the consuming public, the

ultimate test of whether a trademark is generic." *Id.* at 1015 n. 11. But we also based our genericness finding upon detailed information in some 45 exhibits that, taken collectively, suggested that the consuming public considered the composite term "surgicenter" to mean a surgical center generally speaking, as opposed to a surgical center maintained and operated by the plaintiff specifically. *See id.* at 1017. These exhibits included letters from potential consumers and several publications that used the term "surgicenter" in a clearly generic sense. The finding of genericness in *Surgicenters* cannot be separated from the uniquely well-developed record in that case. *See Park 'N Fly,* 718 F.2d at 330–31.

In this case, the district court cited *Surgicenters* for the proposition that "a combination of two generic words is also generic, unless the combination is a 'deviation from natural usage' or an 'unusual unitary combination.'" The court then stated that "[u]nder this analysis, the term 'Filipino Yellow Pages' seems to be neither a 'deviation from natural usage,' nor an 'unusual unitary combination.'" The district court's reading of *Surgicenters* appears somewhat troubling insofar as it oversimplifies our opinion. First, it overlooks our explicit recognition that "words which could not individually become a trademark may become one when taken together." 601 F.2d at 1017 (internal quotation marks omitted). Second, it effectively makes dictionary definitions the crucial factor in assessing genericness, even though *Surgicenters* makes clear that such definitions are "not determinative" and that the "ultimate test" of genericnessness is "how a term is understood by the consuming public." *Id.* at 1015 n. 11. Finally, it severs our *Surgicenters* analysis from its unique factual context, in which a wealth of exhibits supported a finding that the term "surgicenter" was generic even when taken as a whole (as opposed to the sum of generic parts).

Furthermore, reading the *Surgicenters* opinion for the rather broad (and somewhat reductionist) principle that "a generic term plus a generic term equals a generic term" would give rise to an unnecessary conflict between that decision and several other cases, decided both before and after *Surgicenters*, in which we have adopted a more holistic approach to evaluating composite terms.

In *United States Jaycees v. San Francisco Junior Chamber of Commerce*, 513 F.2d 1226 (9th Cir.1975) (per curiam), decided a few years before *Surgicenters*, this court rejected the rather blunt "generic plus generic equals generic" approach to evaluating composite terms. The *Jaycees* court affirmed the district court's holding that "Junior Chamber of Commerce" was a descriptive mark with secondary meaning over a dissent arguing that "Junior Chamber of Commerce" was generic. The dissent relied upon the presence of "junior" and "chamber of commerce" in the dictionary to argue that both terms were generic and that "junior" modified "chamber of commerce" in a perfectly ordinary way, thereby creating a generic term. *Id.* at 1229 (Merrill, J., dissenting). The *Jaycees* court, in affirming over the dissent, implicitly rejected evaluating genericness of composite terms by breaking them down into their parts.[4]

Several of our more recent cases have taken a fairly integrative approach to evaluating composite terms, rejecting the breaking down of such terms into their individual (and often generic) parts. In *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 718 F.2d 327 (9th Cir.1983), *rev'd on other grounds*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), the defendant challenged the validity of the plaintiff's trademark by arguing that "Park 'N Fly" was generic with respect to airport parking lots. The defendant made an argument "based on the words themselves," contending that because "park" and "fly," the component parts of the plaintiff's trademark, are ordinary words, their combination was also generic. *Id.* at 330. We declined to invalidate the plaintiff's trademark as generic based on this analysis:

> The above [argument by the defendant] strongly suggests that the validity of Park 'N Fly's mark is questionable. It cannot compensate, however, for Dollar's failure to provide any evidence with respect to consumer perceptions. We must decide the case on the record before us, not on our own set of assumptions. Without evidence that to the consuming public the primary significance of the term is to denote the service Park 'N Fly offers and not its source, we are without a sufficient evidentiary basis to find Park 'N Fly's mark generic.

*Id.* We distinguished the case before us from *Surgicenters* by noting that the very well-developed record in *Surgicenters*, replete with some 45 exhibits, contained evidence sufficient to sustain a finding of invalidity in that case.

In *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451 (9th Cir.1985), we affirmed the district court's preliminary injunction enjoining the defendant from using the name "California Special Cooler" for its wine cooler products on the ground that it was confusingly similar to the plaintiff's registered trademark, "California Cooler." The defendant in *California Cooler* argued that because the generic terms "California" and "Cooler" could not qualify as valid marks individually, their combination, "California Cooler," was similarly generic. *See id.* at 1455. We rejected this argument: "California Cooler's mark is a composite term, and its validity is not judged by an examination of its parts. Rather, the validity of a trademark

---

4. Furthermore, Judge Ely, in separately concurring, explicitly rejected Judge Merrill's analysis, arguing that the term "Junior Chamber of Commerce," taken as a whole, "refer[s] to the specific source of a 'product' (the National/Jaycees), and is not commonly understood as merely a generic term describing any group of young men pursuing civic betterment." *Jaycees*, 513 F.2d at 1226–27 (Ely, J., concurring).

is to be determined by *viewing the trademark as a whole.* ... Thus, the composite may become a distinguishing mark even though its components individually cannot." *Id.* (emphasis added).

We have reaffirmed this holistic approach to examining the genericness of composite terms in two fairly recent cases. In *Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 59 F.3d 902 (9th Cir.1995), we addressed a dispute over the validity of "Self–Realization Fellowship" and "Self–Realization Fellowship Church" as trademarks. The district court ruled that the marks were invalid because "Self-realization" was generic and because adding "Fellowship" or "Fellowship Church" could not create valid composite terms for referring to a spiritual organization. We reversed: "[The plaintiff] argues that it was improper for the court to rule on the validity of the composite terms by ruling on the validity of their component parts. We agree. The district court erred by using the invalidity of 'Self–Realization' as a trade name and trademark to determine the validity of 'Self–Realization Fellowship' and 'Self–Realization Fellowship Church.'" *Id.* at 912.

Finally, in *Committee for Idaho's High Desert, Inc. v. Yost,* 92 F.3d 814 (9th Cir. 1996), we held that an environmental organization's name, "Committee for Idaho's High Desert," was not generic. Appellants challenged the validity of that tradename by arguing that it was generic based on the genericness of "Idaho's high desert" and "committee." We rejected their argument, stating that "[t]he district court was clearly correct in evaluating the genericness of the name as a whole, rather than looking to its constituent parts individually. .... The relevant question therefore is whether the *entire name* 'Committee for Idaho's High Desert' is generic." *Id.* at 821 (emphasis added).

As the foregoing discussion illustrates, several pre- and post-*Surgicenters* cases have announced what could be described as an "anti-dissection rule" for evaluating the trademark validity of composite terms. *Official Airline Guides, Inc.,* 6 F.3d at 1392 (noting that under this rule, "the validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace"). When *Surgicenters* is examined in light of these later cases, it becomes clear that *Surgicenters* should not be read overbroadly to stand for the simple proposition that "generic plus generic equals generic." Rather, *Surgicenters* must be read in its proper context. First, it must be noted that *Surgicenters* explicitly recognizes that generic individual terms can be combined to form valid composite marks. *See* 601 F.2d at 1017. Second, it must be recalled that we found the term "surgicenter" generic based in large part on a well-developed record of 45 exhibits showing that the term "surgicenter," considered as a whole, was generic (i.e., understood by the consuming public as referring simply to a center at which surgery was performed).

In light of the foregoing discussion, the district court here may have oversimplified matters somewhat when it stated that "[t]he Ninth Circuit has held that a combination of two generic words is also generic, unless the combination is a 'deviation from natural usage' or an 'unusual unitary combination.'" Any arguable imprecision in the district court's application of *Surgicenters* was harmless, however, because the term "Filipino Yellow Pages" would be unprotectible in any event.

In finding "Filipino Yellow Pages" generic, the district court did not rely solely upon the generic nature and presence in the dictionary of "Filipino" and "yellow pages." The district court also considered other evidence tending to suggest that "Filipino Yellow Pages," even when considered as an entire mark, is generic with respect to telephone directories. The district court took note of the following facts: (1) Jornacion himself appeared to use the term "Filipino Yellow Pages" in a generic sense in the Shareholders' Buy Out Agreement with Oriel, when he "agree[d] not to

compete in the Filipino Directory (Filipino Yellow Pages) in California"; (2) FYP did not bring suit to challenge the marketing of a second *Filipino Yellow Pages* to the Filipino–American community on the East Coast; and (3) a *Los Angeles Times* article, in discussing a trend toward specialized yellow pages, appeared to use the term in a generic sense; the article referred to a directory published by one Virgil Junio as "his Filipino yellow pages" instead of using the actual title of Junio's publication.

These three pieces of evidence are not as weighty as the 45 exhibits presented in *Surgicenters,* in which the record established generic use of the term "surgicenter" by *Newsweek* magazine, six medical publications, and the Department of Health, Education and Welfare. *See* 601 F.2d at 1013, 1017 n. 17. An important difference between *Surgicenters* and the instant case should be noted, however. The mark at issue in *Surgicenters* was a federally-registered mark, and thus the burden of proving genericness rested upon the party challenging the mark's validity. *See id.* at 1012, 1014. The mark at issue in this case, in contrast, is not registered; thus FYP, as trademark plaintiff, must prove that "Filipino Yellow Pages" is *not* generic. It does not appear that FYP has offered evidence of nongenericness sufficient to rebut even the fairly modest evidence of genericness offered by AJP. In light of the evidence presented by AJP, it would seem that under the "who-are-you/what-are-you" test, the term "Filipino Yellow Pages" is generic. If faced with the question "What are you?", FYP's *Filipino Yellow Pages,* AJP's *Filipino Consumer Directory,* and the *Filipino Directory of the U.S.A. and Canada* could all respond in the same way: "A Filipino yellow pages." Giving FYP exclusive rights to

the term "Filipino Yellow Pages" might be inappropriate because it would effectively "grant [FYP as] owner of the mark a monopoly, since a competitor could not describe his goods as what they are." *Surgicenters,* 601 F.2d at 1017 (internal quotation marks omitted).

Even assuming that AJP's other evidence of genericness would be insufficient to sustain a genericness finding by itself, it certainly suggests that "Filipino Yellow Pages," if descriptive, would be the feeblest of descriptive marks—in the words of one court, "perilously close to the 'generic' line." *Computerland Corp. v. Microland Computer Corp.,* 586 F.Supp. 22, 25 (N.D.Cal.1984). Such a weak descriptive mark could be a valid trademark only with a strong showing of strong secondary meaning. To this component of the trademark analysis we now turn.[5]

### III

A descriptive term can be protected as a valid trademark only with a showing of secondary meaning. *See Surgicenters,* 601 F.2d at 1014. Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant. *See* 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 15:30 (4th ed.1997). In this case, the only evidence of secondary meaning offered by FYP was contained in the declaration of its founder and president, Oscar Jornacion.

In his declaration, Jornacion testified that FYP had suffered lost revenues of at least $82,000 as a result of consumer confusion generated by AJP's use of the

---

**5.** We have noted in the past that "the lines of demarcation [between the four categories of marks] are not always clear" and that "courts often have difficulty in distinguishing between generic and descriptive terms." *Surgicenters,* 601 F.2d at 1014, 1015. The difference between a generic mark and the weakest of

descriptive marks may be almost imperceptible. In this case, we do not need to determine whether "Filipino Yellow Pages" is a generic or very weak descriptive term. For the reasons discussed *infra,* FYP's failure to show secondary meaning renders the term unprotectible in either case.

**1152**

term "Filipino Consumer Yellow Pages" in its advertising. Jornacion was unable to identify any of the supposedly confused consumers who contacted him regarding incorrect placement of their advertisements, however. Accordingly, AJP objected to these portions of Jornacion's testimony as lacking a proper foundation and unsupported by specific facts. The district court sustained these objections, striking Jornacion's claim of lost revenue, as well as his claim of contacts by confused advertisers. In light of the apparent lack of a foundation for Jornacion's comments, the district court's evidentiary rulings were not erroneous.

 Even if Jornacion's testimony regarding consumer confusion and lost revenue for FYP were admissible, it would be insufficient to establish secondary meaning so as to withstand summary judgment. Evidence of secondary meaning from a partial source possesses very limited probative value. *See, e.g., Norm Thompson Outfitters, Inc. v. GM Corp.,* 448 F.2d 1293, 1297 (9th Cir.1971) (finding that the testimony of the plaintiff's friend possessed "little value in establishing secondary meaning," insofar as testimony from persons closely associated with the plaintiff does not adequately reflect the views of the buying public); *In re Redken Labs., Inc.,* 170 U.S.P.Q. (BNA) 526, 529 (Trademark Tr. & App. Bd.1971) ("The statement by applicant's president that the term 'THE SCIENTIFIC APPROACH' has become distinctive of applicant's services is, at best, a self-serving statement which standing alone carries little weight in persuading us that the term in question functions as an indication of origin."). In *Self-Realization Fellowship Church,* 59 F.3d at 910, we found that declarations from a trademark plaintiff's employees and wholesalers had "little probative value regarding the assessment of consumer perception"; this is because "[t]rademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark." This reasoning would apply *a fortiori* to testimony by the holder

of the claimed trademark himself. In the case at bar, Jornacion's vague, uncorroborated, and clearly self-interested testimony did not create a genuine issue for trial as to whether "Filipino Yellow Pages" has acquired secondary meaning.

In sum, FYP's evidence of secondary meaning was inadmissible, lacking in substantial probative value (as emanating from a far-from-objective source), or both. The district court did not err in concluding that FYP had failed to establish secondary meaning for "Filipino Yellow Pages." Thus "Filipino Yellow Pages," even if descriptive rather than generic, is not a valid and protectible trademark with respect to a telephone directory for the Filipino–American community.

**IV**

For the foregoing reasons, FYP was unable to establish the trademark protectibility of "Filipino Yellow Pages" as a descriptive mark with secondary meaning. The grant of summary judgment in favor of AJP was proper.

AFFIRMED.