**ZIPEE CORP., a Washington corporation, and Zipee.com, Inc., an Oregon corporation, Plaintiffs,**

**v.**

**UNITED STATES POSTAL SERVICE, Defendant.**

**No. CV 99–1290–MA.**

United States District Court, D. Oregon.

Dec. 12, 2000.

Stephen F. English, Robert B. Lowry, Bullivant Houser Bailey, Portland, OR, James R. Myers, Kilpatrick Stockton LLP, Charlotte, NC, Kenneth Godlewski, Kilpatrick Stockton, LLP, Washington, DC, for Plaintiffs.

Kristine Olson, United States Attorney, District of Oregon, William W. Youngman, Assistant United States Attorney, Portland, OR, Rosemarie Christofolo, Keith Beauchamp, Patricia Norris, Jennifer Van Kirk, Barry Willits, Lewis & Roca, Phoenix, AZ, for Defendant.

## OPINION & ORDER

MARSH, District Judge.

The background to this litigation has been set forth in my prior opinion of March, 27, 2000, and will not be repeated here. Following discovery, both parties have moved for summary judgment. In addition, the parties have waived a jury. There are no genuine issues of material fact; what remains is a dispute regarding the state of the law and application of that law to the facts. The central issue is whether the term, "postal service," standing alone, is an unregistered, protectable trademark for the defendant, United States Postal Service.[1]

There is no dispute about the basic, governing legal principles. Defendant bears the burden of establishing that: (1) it has protectable rights in its postal service trade name; and (2) that Zipee's use of that trade name has caused a likelihood of confusion. 15 U.S.C. § 1125(a). The Ninth Circuit has held that the "core element" of a trademark infringement claim is the "likelihood of confusion." *Brookfield Communications v. West Coast,* 174 F.3d 1036, 1053 (9th Cir.1999). Within the context of that inquiry, the similarity of the claimant's mark as compared against the allegedly infringing mark "will always be an important factor." *Id.* at 1054.

█ Trademarks are divided into five general categories: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; and 5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (cites omitted); *see e.g. Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1146–47 (1999) (applying test). A generic term answers the question, "what are you?" while a protectable mark answers

---

1. There is no dispute that defendant holds protectable, registered trademark rights to the phrases "U.S. Postal Service" and "United States Postal Service."

the question, "who are you." *Filipino Yellow Pages,* 198 F.3d at 1147. Overlaying this five-part distinction, is the Supreme Court's "primary significance" test which states that a party seeking to claim rights in a trademark must establish that "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938).

Plaintiff claims that the term "postal service" is generic and thus, entitled to no protection. Defendant claims that postal service is a protectable mark because it is descriptive and the phrase has acquired secondary meaning as a reference to the United States Post Office.[2]

■ A "generic" mark is one which is understood as referring to a particular species or category of goods. A generic mark "cannot become a trademark under any circumstances." *Surgicenters of Am. v. Medical Dental Surgeries,* 601 F.2d 1011, 1014 (9th Cir.1979) (cites omitted). By contrast, a descriptive mark can employ "ordinary" terms while describing a product's features or the use to which a product is put. *Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997).[3] A composite mark may be protectable even though its individual components are not. *Filipino Yellow Pages,* 198 F.3d at 1149.

■ A descriptive mark is protectable only if defendant demonstrates that the term has acquired "secondary meaning" in the marketplace. *Id.* at 143. Secondary meaning may be established by evidence of the following: (1) advertising expenditures; (2) consumer studies linking the mark to a source, (3) unsolicited media coverage; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use. *Genesee,* 124 F.3d at 143. The most critical factor is "how a term is understood by the consuming public." *Filipino Yellow Pages,* 198 F.3d at 1149.

The parties have submitted expert declarations from linguists and historians. Both have also proffered consumer recognition surveys: the plaintiff's survey showing that 70% of consumers recognize "postal service" as a common name rather than as a "brand." Defendant's survey reveals that 60% of consumers believe that "postal service" refers to an organization rather than a type of class of organization. Both parties also proffer hundreds of examples of the use of the term "postal service" in the media as both a short-hand form for the U.S. Postal Service and as a descriptive term for a type of service. Plaintiff relies upon numerous, historical examples of the "generic" use of the term "postal service" by U.S. postal employees and directors. As evidence of actual consumer confusion, defendant has proffered evidence that 46% of internet users seeking to find the site for the United States Postal Service have been misdirected to plaintiff's site.

---

2. There is no claim that "postal service" is suggestive, arbitrary or fanciful.

3. Plaintiff argues that under *A.J. Canfield Co. v. Honickman,* 808 F.2d 291 (3rd Cir.1986), prior to engaging in the generic/descriptive analysis, I must first determine whether the mark in question refers to a service category. I reject plaintiff's reading of the *A.J. Canfield* decision. First, the case addressed an issue involving a new product and a descriptive term employed in relation to that product (chocolate fudge soda). There is nothing new about the U.S. Postal Service. Second, as the Second Circuit in *Genesee* correctly notes, the *A.J. Canfield* decision is properly read, not as a separate test, but as a complement to the "primary significance" test set forth by the Supreme Court in *Kellogg Co. v. National Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938). *Genesee,* 124 F.3d at 143.

■ I find that plaintiff's survey is of little use given the limitations posed by the questioning framework. Asking consumers to choose between a "common name" or a "brand name" when describing "postal service" is simply too narrow since it fails to give the consumer the option of identifying the phrase as a reference to an organization. While defendant's survey is also too narrow, I find it more persuasive on the issue of establishing that more consumers than not associate the phrase "postal service" with an organization. Further, the domestic news articles and advertising more consistently use the phrase "postal service" as a short-hand version for the United States Postal Service. Defendant's competitors, such as Federal Express and United Parcel Service, have been able to use alternative descriptive words and phrases while still competing effectively.

After carefully considering all of the evidence, I find that "postal service," standing alone, constitutes a descriptive phrase that is protectable because it has attained secondary meaning in the minds of consumers as a designation of source rather than as a product or genus of products. In this sense, I find this case squarely analogous to the Eighth Circuit's decision in *Home Builders Association of Greater St. Louis v. L & L Exhibition Management, Inc.*, 226 F.3d 944 (2000). I further find that defendant's consumer survey evidence establishes that consumers have in fact been confused by plaintiff's maintenance of the postal-service.com website, mistakenly believing that it is sponsored by and/or associated with the United States Postal Service. Based upon the foregoing, defendant is entitled to summary judgment on liability on its counterclaims of trademark infringement and un-

fair competition under both the Lanham Act and Oregon law.[4] Plaintiff's motion for summary judgment on its claims for declaratory relief are denied. Whether and to what extent the defendant can protect its mark as against foreign postal services is beyond the relevant scope of this litigation.

■ To prevail on its claim of cybersquatting, defendant must establish that plaintiff has evinced a bad faith intent to profit from its use of the phrase "postal service" in connection with the maintenance of its website and that the postal-service.com domain name is confusingly similar to the defendant's marks. 15 U.S.C. § 1125(d).

■ First, I find that "postal-service.com" is an intuitive domain name for the defendant. It is virtually identical to the defendant's trade name and confusingly similar. Second, plaintiff has registered numerous other names for which it has no apparent connection and for no apparent purpose. These include s-o-n-y.com, waltdisney.com, us-army.com and yahoo-links.com Third, although plaintiff does not directly profit from its use of the postal-service.com designation, it benefits by driving increased traffic to its websites. Fourth, defendant did not engage in the provision of postal services, either in hard copy format or electronic formats, prior to registering its domain name. All of this evidence leads me to conclude that defendant has established that plaintiff has engaged in a bad faith intent to profit from the use of a trademark confusingly similar to the defendant's trademarks. Based upon the foregoing, I find that defendant has established plaintiff's liability under the federal cybersquatting statute.

4. There is no dispute that Oregon law's coverage for trademark and unfair competition is at least co-extensive with that of federal law, if not broader. *See e.g. Classic Instruments, Inc. v. VDO–Argo Instruments, Inc.*, 73 Or. App. 732, 700 P.2d 677 (1985).

Accordingly, defendant's summary judgment motion (# 97) is GRANTED and plaintiff's cross-motions for summary judgment (# 110, 111) are DENIED and the January 9, 2001 trial date is stricken.

However, because neither party addressed damages or ultimate relief in the motion briefing, this issue remains. In addition, following completion of the briefing on these motions, plaintiff's counsel filed a motion to withdraw. To address a briefing schedule on the remaining issues and to determine the status of plaintiff's representation, the parties shall appear on Wednesday, January 3, 2001 at 10:00 a.m. for a status conference.